FILED:  November 15, 2004

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 02-2389(L)
(CA-94-2327-PJM)

———————————

In Re: THE WALLACE & GALE COMPANY

       Debtor

------------------------

ROY E. JONES; ANDREW R. YOUNGBAR; LOUISE HOLCOMB,
Personal Representative of the Estate of Cossie Holcomb; ROBERT
M. BARBER, Personal Representative of the Estate of Milton
Barber

       Intervenors/Plaintiffs - Appellants

         versus

LIBERTY MUTUAL INSURANCE COMPANY; HARTFORD
INSURANCE COMPANY; CONTINENTAL CASUALTY
COMPANY; ADRIATIC INSURANCE COMPANY; ST. PAUL
FIRE & MARINE INSURANCE COMPANY; GRANITE STATE
INSURANCE COMPANY; NEW HAMPSHIRE INSURANCE
COMPANY; TRAVELERS CASUALTY AND SURETY
COMPANY

       Defendants - Appellees

     and

THE WALLACE & GALE COMPANY; MAYOR OF
BALTIMORE; CITY COUNCIL OF BALTIMORE CITY;
AMERICAN EMPLOYERS INSURANCE COMPANY;
INTERNATIONAL INSURANCE COMPANY;

Defendants

THE AETNA CASUALTY AND SURETY COMPANY

Intervenor/Defendant

------------------------

PORTER HAYDEN COMPANY; OFFICIAL COMMITTEE OF UNSECURED, CREDITORS, of Porter-Hayden; OFFICIAL COMMITTEE OF UNSECURED CREDITORS, of ACandS, Incorporated; ACANDS, INCORPORATED; JT THORPE COMPANY; CELOTEX ASBESTOS SETTLEMENT TRUST;

Amici Supporting Appellant

COMPLEX INSURANCE CLAIMS LITIGATION ASSOCIATION; THE AMERICAN INSURANCE ASSOCIATION; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

Amici Supporting Appellee

.

ORDER

Intervenors-Appellants have filed a petition for rehearing and rehearing en banc. Appellant Travelers Casualty and Surety Company has filed a motion to amend the opinion.

The appellants' petition for rehearing and rehearing en banc was submitted to this Court. As no member of this Court or the panel requested a poll on the petition for rehearing en banc, and

As the panel considered the petition for rehearing and is of the opinion that it should be denied,

IT IS ORDERED that the petition for rehearing and rehearing en banc is denied.

It is ORDERED that footnote 3 on page 25 of the printed slip opinion is amended to read as follows:

> The intervenors have urged us to refer to the Maryland Court of Appeals the questions of Maryland law involved in this case, while Travelers has opposed such action. We decline so to do. Indeed, the arguments of each to the district court were the opposite, as Travelers proposed that the district court certify the "allocation" issue to the Maryland Court of Appeals, and the intervenors opposed certification at that time. (Intervenors' br. p.54, Travelers' br. p.29, JA p.1446, 1451).

Entered at the direction of Judge Widener, with the concurrence of Judge Duncan and Judge Michael.

For the Court

/s/ Patricia S. Connor
Clerk

3

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: THE WALLACE & GALE
COMPANY,

*Debtor.*

ROY E. JONES; ANDREW R.
YOUNGBAR; LOUISE HOLCOMB,
Personal Representative of the
Estate of Cossie Holcomb; ROBERT
M. BARBER, Personal Representative
of the Estate of Milton Barber,
*Intervenors-Plaintiffs-
Appellants,*

v.

LIBERTY MUTUAL INSURANCE
COMPANY; HARTFORD INSURANCE
COMPANY; CONTINENTAL CASUALTY
COMPANY; ADRIATIC INSURANCE
COMPANY; ST. PAUL FIRE & MARINE
INSURANCE COMPANY; GRANITE STATE
INSURANCE COMPANY; NEW
HAMPSHIRE INSURANCE COMPANY;
TRAVELERS CASUALTY AND SURETY
COMPANY,
*Defendants-Appellees,*

and

THE WALLACE & GALE COMPANY;
MAYOR OF BALTIMORE; CITY
COUNCIL OF BALTIMORE CITY;

No. 02-2389

AMERICAN EMPLOYERS INSURANCE COMPANY; INTERNATIONAL INSURANCE COMPANY,

*Defendants,*

THE AETNA CASUALTY AND SURETY COMPANY,

*Intervenor-Defendant.*

PORTER HAYDEN COMPANY; OFFICIAL COMMITTEE OF UNSECURED CREDITORS of Porter Hayden; OFFICIAL COMMITTEE OF UNSECURED CREDITORS of ACandS, Incorporated; ACANDS, INCORPORATED; JT THORPE COMPANY; CELOTEX ASBESTOS SETTLEMENT TRUST,

*Amici Supporting Appellant.*

COMPLEX INSURANCE CLAIMS LITIGATION ASSOCIATION; THE AMERICAN INSURANCE ASSOCIATION; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

*Amici Supporting Appellee.*

In Re: The Wallace & Gale
Company,

*Debtor.*

---

Roy E. Jones; Andrew R.
Youngbar; Louise Holcomb,
Personal Representative of the
Estate of Cossie Holcomb; Robert
M. Barber, Personal Representative
of the Estate of Milton Barber,

*Intervenors-Plaintiffs,*

v.

Travelers Casualty and Surety
Company,

*Defendant-Appellant,*

v.

Liberty Mutual Insurance
Company,

*Defendant-Appellee,*

and

The Wallace & Gale Company;
Mayor of Baltimore; City
Council of Baltimore City;
Hartford Insurance Company;
CNA-Continental Casualty
Company; Adriatic Insurance
Company; St. Paul Fire & Marine
Insurance Company; American
Employers Insurance Company;

No. 02-2427

INTERNATIONAL INSURANCE COMPANY;
GRANITE STATE INSURANCE COMPANY;
NEW HAMPSHIRE INSURANCE
COMPANY,
                              *Defendants,*

THE AETNA CASUALTY AND SURETY
COMPANY,
                    *Intervenor-Defendant.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-94-2327-PJM; BK-85-0092; AP-94-1784)

Argued: October 30, 2003

Decided: October 6, 2004

Before WIDENER and DUNCAN, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Duncan and Senior Judge Michael concurred.

## COUNSEL

**ARGUED:** Mark Herbert Kolman, DICKSTEIN, SHAPIRO,
MORIN & OSHINSKY, L.L.P., Washington, D.C., for Appellants.
Lee Hedgecock Ogburn, KRAMON & GRAHAM, P.A., Baltimore,
Maryland; William Judkins Bowman, HOGAN & HARTSON,
L.L.P., Washington, D.C.; Robert L. Hoegle, CARTER, LEDYARD
& MILBURN, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:**

Jerold Oshinsky, Katherine J. Henry, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C.; James R. Matthews, KEATING, MUETHING & KLEKAMP, L.L.P., Cincinnati, Ohio, for Appellants. Steven M. Klepper, KRAMON & GRAHAM, P.A., Baltimore, Maryland; Jonathan S. Franklin, HOGAN & HARTSON, L.L.P., Washington, D.C.; Harry Lee, STEPTOE & JOHNSON, L.L.P., Washington, D.C.; David M. Rice, Laurie J. Hepler, CARROLL, BURDICK & MCDONOUGH, L.L.P., San Francisco, California; Robert M. Wright, William P. Pearce, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland; Mary S. Diemer, CARTER, LEDYARD & MILBURN, L.L.P., Washington, D.C., for Appellees. Marc S. Mayerson, Robert E. Johnston, SPRIGGS & HOLLINGSWORTH, Washington, D.C., for Amicus Curiae Porter Hayden. Philip E. Milch, CAMPBELL & LEVINE, L.L.C., Pittsburgh, Pennsylvania, for Amicus Curiae Creditors of Porter Hayden. Armand J. Volta, Jr., LAW OFFICES OF PETER G. ANGELOS, Baltimore, Maryland, for Amicus Curiae Creditors of ACandS. Mark A. Packman, Joel E. Greer, GILBERT, HEINTZ & RANDOLPH, L.L.P., Washington, D.C., for Amici Curiae ACandS, et al. Laura A. Foggan, John C. Yang, Amy K. Graham, WILEY, REIN & FIELDING, L.L.P., Washington, D.C., for Amici Curiae Insurance Litigation Association, et al. Thomas J. Quinn, Stephen T. Roberts, MENDES & MOUNT, L.L.P., New York, New York, for Amici Curiae Lloyd's, et al.

---

## OPINION

WIDENER, Circuit Judge:

This appeal concerns insurers' liability for asbestos-related bodily injuries. The intervenors appeal from the district court's decision adopting what is called the pro-rata rule of *Mayor & City Council of Baltimore v. Utica Mutual Insurance Co.*, 802 A.2d 1070 (Md. Ct. Spec. App. 2002), and holding that the intervenors' claims are subject to an aggregate limit by reason of the "completed operations" provisions of the insurance policies. We affirm.

### I.

The intervenors in this case are four former employees or personal representatives of former employees of the Bethlehem Steel plant

located in Baltimore, Maryland. The intervenors claim that they were injured by asbestos that was installed by Wallace & Gale Company. Wallace & Gale was an insulation contractor that installed asbestos-containing products for different businesses including Bethlehem Steel. In the early 1970's, Wallace & Gale halted its use of asbestos-containing products due to safety and health concerns. Wallace & Gale filed for bankruptcy in 1984, and numerous claimants, including the intervenors, have filed proofs of claim against Wallace & Gale for asbestos-related injuries.

During the time it installed asbestos-containing products, Wallace & Gale purchased comprehensive general liability insurance policies and excess liability insurance policies from the following insurers, Aetna Casualty & Surety Company, now known as Travelers Casualty & Surety Company (Travelers); Hartford Accident and Indemnity Company (Hartford); St. Paul Fire and Marine Insurance Company (St. Paul); Granite State Insurance Company (Granite); Continental Casualty Company (Continental); Riunione Adriatica Di Sicurta (Riunione); and New Hampshire Insurance Company (New Hampshire).[1] (JA 1445, 1541-1547, 1549, 1560, 1577, 1592, 1607, 1622,

---

[1]Wallace & Gale maintained the following liability insurance policies from 1962 until 1985.

Primary Policies:

| Insurer | Dates of Coverage | Aggregate limit for operations/ negligence claims | Aggregate limit for products/ completed operations claims |
|---------|-------------------|---------------------------------------------------|-----------------------------------------------------------|
| Travelers | 1/1/62-1/1/63 | None | minimum of $25,000 |
| Travelers | 1/1/63-1/1/64 | None | minimum of $25,000 |
| Travelers | 1/1/64-1/1/65 | None | minimum of $25,000 |
| Travelers | 1/1/65-1/1/66 | None | minimum of $25,000 |
| Travelers | 1/1/66-1/1/67 | None | $1,000,000 |
| Travelers | 1/1/67-1/1/68 | None | $1,000,000 |

1637, 1652, 1682, 1717, 1750, 1787, 1841, 1878, 1894, 1921-1924, 191-1982, 2001-2002, 2007, 2033, 2095, 2111, 2145-2146, 2245-2547, 2549, 2574, 2606, 2619, 3325-3327) Under the plan adopted by the bankruptcy court, the proceeds from the insurance policies will be used to fund a trust to handle asbestos injury claims filed against Wallace & Gale. The amount that the insurers will be required to contribute to the trust depends on the interpretation of the insurance contracts and the outcome of this litigation.

## II.

In 1994, Travelers filed a declaratory judgment action, by way of an adversary proceeding within the Chapter 11 Bankruptcy case of Wallace & Gale against Wallace & Gale, the Mayor and City Council of Baltimore, and Wallace & Gale's other insurers. Travelers sought a judicial determination of the applicability and extent of coverage of

| Travelers | 1/1/68-1/1/69 | None | $1,000,000 |
|---|---|---|---|
| Travelers | 1/1/69-1/1/70 | None | $1,000,000 |
| Travelers | 1/1/70-1/1/71 | None | $1,000,000 |
| Travelers | 1/1/71-1/1/72 | None | $1,000,000 |
| Travelers | 1/1/72-1/1/73 | None | $1,000,000 |
| Travelers | 1/1/73-1/1/74 | None | $1,000,000 |
| Travelers | 1/1/74-1/1/75 | None | $1,000,000 |
| Travelers | 1/1/75-1/1/76 | None | $1,000,000 |
| Travelers | 1/1/76-1/1/77 | None | $1,000,000 |
| Travelers | 1/1/77-1/1/78 | None | $1,000,000 |
| Travelers | 1/1/78-1/1/79 | None | $1,000,000 |
| Travelers | 1/1/79-1/1/80 | None | $1,000,000 |
| Hartford | 1/1/80-1/1/81 | None | $500,000 |
| Hartford | 1/1/81-1/1/82 | None | $500,000 |
| St. Paul | 1/1/82-1/1/83 | None | $1,000,000 |
| St. Paul | 1/1/83-4/1/83 | None | $1,000,000 |
| Granite | 9/30/84-1/24/85 | $500,000 | $500,000 |
| Excess policies: | | | |
| Continental | 1/1/80-1/1/81 | $1,000,000 | $1,000,000 |
| Riunione | 1/1/81-1/1/82 | None | $500,000 |
| St. Paul | 1/1/82-1/1/83 | None | $3,000,000 |
| St. Paul | 1/1/83-4/1/83 | None | $3,000,000 |
| New Hampshire | 9/30/84-1/25/85 | $1,000,000 | $1,000,000 |

insurance policies issued by Wallace & Gale's insurers. Through this action, Travelers sought to determine the extent of its liability, and the liability of other Wallace & Gale insurers, in a lawsuit brought against Wallace & Gale by the Mayor and City Council of Baltimore.

In March of 1995, the intervenors moved to intervene in the declaratory judgment action. The district court granted the motion. Before disposition of the claims of the intervenors, the claims brought by the Mayor and City Council of Baltimore settled. The intervenors' first amended complaint of December 29, 1999, raised two issues that are the subject of this appeal. In their first amended complaint, the plaintiffs raised the first issue by seeking a declaration

> [t]hat each Policy triggered has an obligation to defend and indemnify Wallace & Gale for the full value of each individual claimant's damages subject only to the "per person" and "per occurrence" limits of those policies.

By seeking this declaration, the intervenors contended that the insurers are liable for "all sums" that are payable on asbestos claims for which Wallace & Gale is liable. Second, the intervenors asserted that their claims are not subject to the aggregate limit of the policies under the "general liability, negligence or other claims" provisions in the policies. We may refer to these two issues as the all sums or allocation issue and the completed operations issue in this opinion.

In response, the Wallace & Gale insurers argued that they are only liable under the comprehensive general liability insurance policies to pay for bodily injury that occurs during the policy period. Under this "pro rata" argument, the Wallace & Gale insurers would be liable only for a pro rata portion of the bodily injury that occurred during the time each insurer's policy was in place. For any bodily injury occurring during a time when the insured was self-insured or when the insured's policy contained, for example, an exclusion for the type of injury suffered by the intervenors, the insured would bear the risk of liability. On the completed operations issue, the Wallace & Gale insurers asserted that any injuries that occurred after Wallace & Gale completed its installation work with asbestos were subject to the aggregate limits of the policies under the completed operations hazard clauses in the policies.

In March of 2001, the intervenors filed a motion for summary judgment, and the Wallace & Gale insurers countered with a cross motion for summary judgment in April of 2001. The district court held a hearing on the motions for summary judgment on June 11, 2001. By their summary judgment motions, the parties sought a judicial determination of whether, as a matter of law, the Wallace & Gale insurers' exposure to the claims of the intervenors was limited by either the pro rata allocation of liability or the aggregate limits of liability triggered by the completed operations clauses in the insurance contracts. The district court took the motions under advisement at the conclusion of the hearing.

In February of 2002, the district court issued its opinion on the motions for summary judgment. See *Aetna Cas. & Sur. Co. v. Wallace & Gale Co.* (*In re Wallace & Gale Co.*), 275 B.R. 223 (D. Md. 2002). The district court noted that Maryland had "yet to speak definitively to the question" of allocation and, accepting for argument that, in its opinion, both the Wallace & Gale insurers and the plaintiffs presented "reasonable readings to the language of the policies," determined that the "tie" must go in favor of the insured, meaning the intervenors. The district court held

> that if a claimant was initially exposed to asbestos while Wallace & Gale was on the job, the insurer whose policy was in place at that time and each insurer thereafter will be obliged to pay "all sums" Wallace & Gale becomes legally obligated to pay that claimant as damages. Consequently, there will be no pro rata allocation nor any allocation to Wallace & Gale for any period of the progressive damage during which it may have lacked insurance.

275 B.R. 236.

Turning to the completed operations issue, the district court agreed with the Wallace & Gale insurers that the claims of Bethlehem steel workers who were exposed initially to asbestos after Wallace & Gale completed asbestos installation would be subject to the aggregate liability limits of the insurance policies.

> If a claimant's initial exposure occurred while Wallace & Gale was still conducting operations, policies in effect at

> that time will not be subject to any aggregate limit. If, how-
> ever, initial exposure is shown to have occurred after opera-
> tions were concluded or if exposure that began during
> operations continued after operations were complete, then
> the aggregate limits of any policy that came into effect after
> operations were complete will apply. Where a given claim-
> ant falls within this framework will have to be considered
> on a case-by-case basis.

275 B.R. 241. As a result, the insurers who issued general liability policies to Wallace & Gale for time periods wholly after Wallace & Gale completed its asbestos installation work will only be liable to the extent of the aggregate limit contained in the policy. 275 B.R. 250. Policies issued to Wallace & Gale for time periods in which Wallace & Gale was installing asbestos will not be subject to the aggregate limit of liability contained in the policies. In sum, the district court granted the intervenors' motion for summary judgment as to the allocation issue and granted Travelers' motion for summary judgment as to the completed operations issue. 275 B.R. 250.

The district court filed its decision on February 20, 2002. 275 B.R. 223. In its ruling, the district court also denied a motion for summary judgment filed by Travelers in which Travelers argued that insufficient evidence existed as a matter of law to prove that Travelers did issue comprehensive general liability insurance policies to Wallace & Gale for the years 1962 to 1965. See *In re Wallace & Gale*, 275 B.R. at 241-44. The case proceeded to a bench trial on this issue of the lost policies for the years 1962 to 1965. After a bench trial, the district court decided that there was sufficient evidence to enforce the Travelers policies for the years 1962-1965.

Based on the district court's decision that the policies for the years 1962 to 1965 were enforceable, Travelers filed a motion for leave to file a cross-claim or, in the alternative, a third-party complaint against Liberty Mutual Insurance Company on June 7, 2002. The theory behind Travelers' motion was that the district court had previously decided that there was insufficient evidence to enforce policies issued to Wallace & Gale by Liberty Mutual for the years 1959 to 1962 which had been lost over the years. Travelers argued that the evidence which supported the district court's conclusion that Travelers' 1962

to 1965 policies could be enforced was "essentially equivalent to evidence which should support the conclusion that the 1959 to 1962 Liberty Mutual policies should be enforced." Travelers contended that even if it might be liable for defense costs and indemnity costs for bodily injuries for the 1959-1962 years, Liberty Mutual should "contribute its share to the defense and indemnity costs incurred by the other insurers."

During the time this case was awaiting a resolution on Travelers' motion, the Maryland Court of Special Appeals on July 2, 2002, issued its ruling in *Mayor & City Council of Baltimore v. Utica Mutual Insurance Co.*, 802 A.2d 1070 (Md. Ct. Spec. App. 2002). In *Utica Mutual*, the Court of Special Appeals adopted as the law of Maryland the pro rata allocation theory advanced by Travelers. See 802 A.2d at 1101-1102. The *Utica Mutual* court held

> that (1) the obligation to indemnify the insured under the circumstances of this case, which involves continuing asbestos product property damage, is to be prorated among all carriers based on their time on the risk, (2) the "joint and several" or "all sums" allocation method is incompatible with the injury-in-fact/continuing trigger that is applicable to the case at bar, (3) an insured who elects not to carry liability insurance for a period of time, either by electing to be self-insured, or by purchasing a policy which withholds coverage pursuant to a particular exclusion, as in the case of the products hazard exclusions found in this case, will be liable for the prorated share that corresponds to periods of self-insurance or no coverage . . . .

802 A.2d 1101-1102. Travelers asked the district court to reconsider its February 20, 2002 ruling adopting the all sums allocation approach in light of the decision of the Maryland Court of Special Appeals in *Utica Mutual*.

On September 18, 2002, the district court granted Travelers' motion to reconsider the district court's ruling on the allocation issue. See *Aetna Cas. & Sur. Co. v. Wallace & Gale, Co. (In re Wallace & Gale Co.)*, 284 B.R. 557 (D. Md. 2002). The district court concluded that the Court of Special Appeals' opinion in *Utica Mutual* governed

the dispute over allocation between the plaintiffs and Travelers and determined that no persuasive data had been offered to demonstrate that the Maryland Court of Appeals would reach a decision contrary to the *Utica Mutual* opinion. 284 B.R. at 559. Applying *Utica Mutual*, the district court adopted the pro rata allocation approach and concluded that Wallace & Gale "will be responsible for a prorated share for any period in which it may have been uninsured." 284 B.R. at 559. Other than the allocation issue, the district court did not reconsider any other issues covered in the February 20, 2002 opinion. 284 B.R. at 559.

Also on September 19, 2002, the district court determined that Travelers' motion for leave to file a cross-claim or, in the alternative, a third-party complaint against Liberty Mutual was moot. Under the pro-rata allocation method, Travelers would not be liable for any bodily injuries that occurred during a period of time when it did not provide comprehensive general liability insurance to Wallace & Gale.

The district court issued its final order of judgment on October 28, 2002. The district court denied the plaintiffs' motion for summary judgment. The district court granted Travelers' motion for summary judgment on the allocation issue and adopted the pro rata allocation analysis embraced by the Maryland Court of Special Appeals in *Utica Mutual*. The district court also ordered that insurance policies in effect "in whole or part while Wallace & Gale was engaged in the asbestos installation operation during which the claimant was exposed shall not be subject to aggregate limits as set forth in the policies." Bodily injury claims brought by claimants exposed to asbestos after Wallace & Gale completed its asbestos installation operations shall be subject to the aggregate limits of insurance policies in effect wholly after Wallace & Gale halted asbestos installation operations.

The intervenors appeal from the district court's final order denying their motion for summary judgment, granting Travelers' motion for summary judgment, and granting Travelers' motion for reconsideration. We have jurisdiction to entertain the appeal of the intervenors from denial of their motion for summary judgment under *Marathon v. County of Chesterfield, Virginia*, 95 F.3d 1263, 1265 (4th Cir. 1996).

### III.

We review de novo the district court's order awarding summary judgment. See *State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 254 (4th Cir. 2003). We construe the facts of the case in the light most favorable to the non-moving party. 343 F.3d at 254. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). We should uphold an award of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The remainder of this opinion must be set against the Maryland requirement for causation of damages in such asbestos personal injury cases, as is set forth in the opinion of the district court:

> Maryland courts have held that asbestos-related injury begins with exposure, carries forward while the asbestos fibers are in residence and continues through to manifestation of the disease. The parties, moreover, have stipulated that it cannot be said with certainty when injury actually occurs or to what degree. Quite possibly, therefore, actual injury could occur in whole or part during any one or more policy periods, including those coming after Wallace & Gale completed its operations.

*In re: Wallace & Gale Co.*, 275 Br. 223, 238 (D.Md 2002). It is at once apparent that the definition employed by the district court included the stipulation of the parties, a part of which follows:

> Bodily injury and disease caused by asbestos, including asbestos-caused cancers and non-cancerous asbestos-caused diseases, are the cause of a cumulative process that begins immediately upon initial inhalation of asbestos fibers, continues while the asbestos fibers remain in residence inside the body and continues through the manifestation of the asbestos-related disease.

IV.

A.

Turning first to the allocation or all sums issue, however the same may be called, the parties agree on the policy language from the general comprehensive liability policies that applies to the question of allocation. The language of the standard form general comprehensive liability insurance policies purchased by Wallace & Gale from 1962 until 1984 is similar:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> > bodily injury or
> > property damage
> to which this insurance applies, caused by an occurrence
> . . . .

In their brief, the intervenors use the Travelers policy from 1973 as the model for the remaining policies.

The 1973 Travelers policy language is cited above. Under the policy, "bodily injury" is defined as

> bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"Occurrence" is defined as

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Under this policy language, the intervenors contend that

> the insuring agreement and the definitions show that for those claims against Wallace & Gale that trigger insurance

coverage (because at least some portion of the claimant's bodily injury happened during the policy period), the [p]olicies' insuring agreements promise insurance coverage for Wallace & Gale's total liability - "all sums" - whether or not some portion of the bodily injury continues past the policy period.

(Brief at 4)

Because this case is an adversary proceeding brought under the bankruptcy jurisdiction, 28 U.S.C. § 1334, as a case arising out of or related to the Chapter 11 bankruptcy of Wallace & Gale, the rule which we apply in ascertainment of the law to be applied with respect to the various positions of the parties to this appeal is that expressed in *Butner v. United States*, 440 U.S. 48 (1979) in which the Court, in a bankruptcy case with respect to the determination of property rights concerning a North Carolina mortgage, reasoned that:

Apart from these provisions [none applicable here], however, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. 440 U.S. at 54.

The Court continued:

Property interests are created and defined by state law. Unless some federal interest requires some different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. 440 US. at 55.

To quote a little out of context, but with the meaning of the Court intact: ". . . the basic federal rule is that state law governs." 440 U.S. at 57.

The property interests involved here are the rights of the insurance companies to have their obligations for payment ascertained and, as well, the rights of the intervenors to have their claims against the bankrupt estate considered for payment and satisfaction. The interve-

nors' right to collect for bodily injuries from the insurance companies is regulated under Maryland statute § 19-102, and, as well, we safely assume at least some, even if not all, of their claims for personal injury arise under state law, as illustrated by the fact the ascertainment of causation of asbestos injuries is admittedly under Maryland law.

While *Butner* was decided under the provisions of the Bankruptcy Act, which has been superceded by the Bankruptcy Code, *Butner*'s holding has also been applied to cases decided under the Bankruptcy Code. And the cases following *Butner* are quite on point with the fact situation present in the case at hand. Cases in this circuit on point with a determination of property interest by application of state law follow: *In re: Merritt Dredging*, 839 F.2d 203, 205 (4th Cir. 1988) (interest of the bankrupt in the charter party of a barge); *Gray v. Snyder*, 704 F.2d 709, 712, n.3 (4th Cir. 1983) (bankrupt's obligation to support under North Carolina law); *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132, 135 (4th Cir. 1988) (alter-ego claims under Virginia law of a Chapter 7 bankrupt corporation); *In re: Ballard*, 65 F.3d 367, 371 (4th Cir. 1995) (entireties interest in realty of surviving spouses); *American Bankers Ins. Co. of Florida v. Maness Honda Auto*, 101 F.3d 358, 362 (4th Cir. 1996) (debtors' homeowners insurance policy); *In re: Dameron*, 155 F.3d 718, 722 (4th Cir. 1998) (interest of a debtor trustee in the corpus of his trust); *In re: Shearin*, 224 F.3d 346, 349 (4th Cir. 2000) (interest of a debtor in a law firm); *In re: Moffett*, 356 F.3d 518, 521 (4th Cir. 2004) (interest of a Chapter 11 debtor in a repossessed used 1998 Honda auto).

No federal interest has been suggested to us or has come to our attention which requires some different result. *Butner*, 440 U.S. at 55. So the law of Maryland is the applicable law we apply in this case.

### B.

As noted, on February 20, 2002, the district court filed its opinion adopting the all sums theory of the case sought by the intervenors, *In re: Wallace & Gale Co.*, 275 B.R. 223, 236 (D. Md. 2002). On July 2, 2002, however, the Maryland Court of Special Appeals, in *Mayor and City Council of Baltimore v. Utica Mutual Insurance Company*, 802 A.2d 1070 (Md. App. 2002), an asbestos case, adopted the theory of a pro rata allocation by time on the risk, as advocated here by Trav-

elers, and rejected the all sums theory advocated by the intervenors. On September 18, 2002, the district court corrected its February 20, 2002 decision, 275 B.R. 223, and followed *Utica Mutual* in *In re: Wallace & Gale Co.*, 284 BR. 557 (D.Md. 2002). It is from those decisions that the intervenors appeal, the principal ground of their appeal being the correctness of that decision adopting the pro-rata theory by time on the risk as the law of Maryland. Other than the question of allocation, the decision of February 20, 2002, 275 B.R. 223, was not changed.

The intervenors object to the adoption of *Utica Mutual* on a number of grounds.

The first objection is that the Maryland Court of Appeals had granted a petition for certiorari in the *Utica Mutual* case itself, but the petition for certiorari was not acted upon because the parties settled the case prior to decision. That same reason for not following a decision of the Maryland Court of Special Appeals was considered by this court in *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997 (4th Cir. 1998), when the question on appeal was the same as here, whether to follow a decision of the Maryland Court of Special Appeals. This court, in that case, followed the Court of Special Appeals, quoting *West v. AT&T*, 311 U.S. 223, 237 (1940) deciding that:

> [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. 160 F.3d at 1002.[2]

---

[2]While *West* and *Assizurazioni* are diversity cases, the ascertainment of what the law of a State is, and how to ascertain the same, should be persuasive, even if not controlling, in this bankruptcy case. At this point we note that the Supreme Court has indicated, in at least one review of a decision of this court, that it was not disposed to displace the considered judgment of this court of appeals on an issue whose resolution is so heavily contingent upon an analysis of state law, *Runyon v. McCrary*, 427 U.S. 160, 181 (1976), and was hesitant to overrule its decision by a federal court skilled in the law of particular State unless its conclusions were shown to be unreasonable in *Bishop v. Wood*, 426 U.S. 341, 346, n.10 (1976).

*Assicurazioni* decided that the grant of certiorari by the Maryland Court of Appeals under the same circumstances present here did not constitute persuasive data that the Maryland Court of Appeals would choose not to follow the decision of the intermediate appellate court. The district court, in *Assicurazioni*, had also relied on what it called common sense or what ought to be the law. We held that those reasons also did not constitute persuasive data permitting us to ignore the holding of the Maryland Court of Special Appeals. We equate those last reasons as there phrased by the district court to the argument made here by intervenors, that a majority of the States have adopted the rule of all sums rather than the pro rata rule. The opposite claim as to a majority is made by the insurers. Which view is the numerical majority is a matter we need not decide.

*Assicurazioni* held that a federal court can depart from an intermediate court's fully reasoned holding as to state law only if "convinced" that the State's highest court would not follow that holding. *Assicurazioni*, 160 F.3d at 1001. In that respect, the intervenors also argue that the case of *Mitchell v. Maryland Casualty*, 595 A.2d 469 (Md. 1991) is contrary to *Utica Mutual* and indicates that the Court of Appeals would not follow the pro rata rule of *Utica Mutual*. *Mitchell* was an asbestos bodily injury case with respect to the triggering of insurance coverage under a comprehensive general liability policy similar to those involved here. The trial court in that case held that insurance coverage was provided only after an asbestos-related injury had become manifest, which holding was reversed, the Court stating that defense and indemnification of the insured is triggered upon exposure to the insured's asbestos products during the policy period by a person who suffers bodily injury and that the insurance company should indemnify the asbestos contractor for any judgment rendered against it, or which it may have become legally obligated to pay, in connection with the asbestos-related claims. We do not read the triggering requirement of exposure during the policy period or an obligation to indemnify on account of legal obligation to pay as inconsistent with *Utica Mutual*. Indeed, in the case of *Bausch & Lomb v. Utica Mutual*, 735 A.2d 1081 (Md. 1999), the court construed a liability policy in which the insurance company was obligated to pay on behalf of Bausch & Lomb all sums which Bausch & Lomb might become legally obligated to pay as damages on account of property damage. Bausch & Lomb had a waste disposal system consisting of settling

tanks, an unlined earthen lagoon, a holding tank, three large drywells and a network of pipe. This waste disposal system, acceptable in industrial practices at the time of its installation, nevertheless leaked contaminants which contained certain heavy metals. This leaking and the damage to other property owners took place at least until 1987, and at issue in the case were four insurance policies for the years 1982 through 1985 which contained an endorsement substantially limiting any liability for those years. Bausch & Lomb claimed that the policies merely required it to show that some property damage took place during the policy periods at issue. The trial court concluded that technology was not available to ascertain the damage to Bausch & Lomb's own property during the applicable period and so awarded damages for the entire period of years to Bausch & Lomb. The Court of Appeals, however, held that the trial court's decision, that technology was not available, was not supported by the evidence. It therefore remanded the case to the trial court for the parties to introduce evidence as to the amount of property damage which fell within the period of policy coverage. While the question presented in that case was not exactly the same as the issue here, it is similar and is an indication to us that the time on the risk decision of the Court of Special Appeals in *Utica Mutual* is not antagonistic to Maryland law. Thus we are not convinced that the Court of Appeals would decide the allocation question differently than did the Court of Special Appeals in *Utica Mutual*.

The answer to the argument that the District of Columbia Court of Appeals has decided the allocation question in favor of the all sums method in *Keene Corp. v. Insurance Company of North America*, 667 F.2d 1034 (D.C. Cir. 1981) is that *Keene* was considered by the Maryland Court of Special Appeals in *Utica Mutual* and rejected. The Maryland Court stated that it disagreed "with the approach taken in *Keene*, and the 'all sums' and 'joint and several approach' in general. We are persuaded that the "all sums" language of the standard CGL policy must be read in concert with other language that limits a policy's liability for damage or loss that occurs during the policy period, . . . ."

The intervenors also argue that *Utica Mutual* is inconsistent with Maryland Code, Insurance, § 19-102, the pertinent parts of which are:

§ 19-102.   Provisions in liability policies for payment of
              loss and bankruptcy of insured.

(a)   *Payment of liability or loss by insured.* - A liability
insurance policy issued in the State may not require the
insured to pay for liability or loss under the policy.

(b)   *Bankruptcy or insolvency of insured.* - Each liability
insurance policy issued in the State shall provide that:

    (1)   the bankruptcy or insolvency of the insured does not
release the insurer from liability; and

    (2)   if an injured person or another person claiming by,
through, or under the injured person is unable, after execu-
tion on a final judgment entered in an action against an
insured, to recover the full amount of the final judgment, the
person may bring an action against the insured's insurer in
accordance with the terms of the policy for the lesser of the
amount of the judgment recovered in the action against the
insured or the amount of the policy.

They argue that *Utica Mutual* violates § 102(a), a provision that
such a policy "may not require the insured to pay for liability or loss
under the policy." The answer to that is that the policy makes no such
requirement. The policy's provision for payment is that "the company
will pay on behalf of the insured all sums which the insured shall
become legally obligated to pay as damages because of . . . an occur-
rence." The policy as here written is simply the result of the devolu-
tion of such liability policies which initially, some years ago, were
policies of indemnity requiring the insured to pay claims or judgments
before liability under the policy attached to the insurance company.
That devolution is explained in greater detail than we need note here
in *Poe v. Philadelphia Casualty Co.*, 84 A. (Md. 1912).

The next objection is that § 102(b)(1) is violated by *Utica Mutual*
in that "the bankruptcy or insolvency of the insured [Wallace &
Gale]" releases the insured from liability. Such, however, is not the
case. The insolvency of Wallace & Gale does not release any insur-

ance company from its contractually required policy obligation during a policy period. The allocation of risk to the insured is for periods for which there is no insurance in force or for which there is no coverage by an insurance policy which is in force.

To the general argument that equity and fairness should favor the satisfaction of legitimate claims for personal injury against Wallace & Gale, whether or not reduced to judgment, the answer is that it is neither equitable nor fair to require an insurance company to pay for coverage during a period for which no effective coverage is in force. For the coverage periods in which effective policies are in force, liability of the insurance carrier is decided favorably to the intervenors by *Utica Mutual*.

### V.

A part of the district court's decision in *In re: Wallace & Gale Co.*, 275 B.R. 223, 237-241 (D. Md. 2002), subjected some of the claims of the intervenors to aggregate limits under the policy provisions.

> If a claimant's initial exposure occurred while Wallace & Gale was still conducting operations, policies in effect at that time will not be subject to any aggregate limit. If, however, initial exposure is shown to have occurred after operations were concluded or if exposure that began during operations continued after operations were complete, then the aggregate limits of any policy that came into effect after operations were complete will apply. Where a given claimant falls within this framework will have to be considered on a case-by-case basis. 275 B.R. at 241.

The policy provisions involved are from Hartford's policy, which is typical.

> Subject to the above provision respecting "each occurrence," the total liability of [Hartford] for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the schedule as "aggregate."

* * *

"[C]ompleted operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.

* * *

"[B]odily injury" means bodily injury, sickness or disease sustained by an person which occurs during the policy period, including death at any time resulting therefrom.

The argument of intervenors is "The Completed Operations Hazards Do Not Apply To The Asbestos-Related Claims Because 'The Bodily Injury' Did Not Begin To Occur After Completion of *Wallace & Gale's* Operations." Br. p. 47.

That argument, however, on its face is far broader than the district court's decision we have quoted just above from 275 B.R. at 241. For example, a claimant's initial exposure which occurred while Wallace & Gale was still conducting operations was not subject to any aggregate limit for policies in effect at that time even if the exposure extended beyond the operations of Wallace & Gale. Also, if exposure which began during operations continued after operations were completed, the aggregate limits of policies which came into effect after operations would apply, but, as stated, the aggregate limits would not apply to those policies in effect at the time of the exposure during Wallace & Gale's operations.

The other fact situations to which intervenors may be subjected are disposed of by reference to the terms of the policy. The Maryland law for construing the issue of coverage under insurance policies is set out in *Bausch & Lomb v. Utica Mutual*, 625 A.2d 1021, 1031 (Md. 1993).

Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construc-

tion is to apply the terms of the insurance contract itself. Unless there is an indication that the parties intended to use words in the policy in a technical sense, we accord the words their usual, ordinary, and accepted meaning. A word's ordinary signification is tested by what meaning a reasonably prudent layperson would attach to the term. Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, as with contracts generally, the parties' intention is to be ascertained from the policy as a whole. In the event of an ambiguity, courts may consider extrinsic evidence as to the meaning of policy language. (625 A.2d at 1031. Citations omitted.)

We see no ambiguity in the terms of the policy and so apply the terms of the insurance contract itself to the facts at hand.

The "completed operations hazard" includes bodily injury . . arising out of operations . . ., but only if the bodily injury occurs after such operations are completed and occurs away from the premises owned by or rented to the named insured.

* * *

Subject to the above provision respecting "each occurrence" the total liability of [the insurance company] for all damages because of (1) all bodily injury included within the "completed operations hazard" . . . shall not exceed the limit of bodily injury liability stated in the schedule as "aggregate."

So the literal terms of the policy provide that for the bodily injury there mentioned, such damage under the completed operations hazard shall not exceed the "aggregate," as stated in the schedule. This construction is entirely in accord with the decision of the district court we have quoted above at 275 B.R. 241, and we so hold.

The intervenors next argue that they incurred bodily injury as a result of inhaling asbestos fibers that were abandoned during the installation process. Each comprehensive general liability insurance

policy contains an exception to the completed operations hazard which exempts from the aggregate limits bodily injury claims that arise out of abandoned or unused materials.

> The completed operations hazard does not include bodily injury or property damage arising out of . . . (b) the existence of tools, uninstalled equipment or abandoned or unused materials . . . ."

The intervenors now contend that during the installation process, asbestos fibers were released into the Bethlehem Steel facility as "abandoned or unused materials" coming from "mixing, cutting, and sawing the materials and asbestos-containing dust was released into the air." Br. at 50. The intervenors have raised this argument for the first time on appeal, after litigating this case since 1995. However, the failure of a party at trial to raise a certain interpretation of an insurance contract results in a waiver of that argument on appeal absent exceptional circumstances. See *Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 239 (4th Cir. 1999) ("Canada Life waived [an argument based on a provision in the insurance contract] because it failed to raise it below."); *Corti v. Storage Tech. Corp.*, 304 F.3d 336, 343 (4th Cir. 2002) (Niemeyer, J., concurring) ("[I]t remains the law of this circuit that when a party to a civil action fails to raise a point at trial, that party waives review of the issue unless there are exceptional or extraordinary circumstances justifying review.") (citing *Canada Life*, 185 F.3d at 239); *United States v. One 1971 Mercedes Benz, etc.*, 542 F.2d 913, 914-915 (4th Cir. 1976).

The district court has filed at least two detailed written published opinions in this case, reported at 275 B.R. 223 and 284 B.R. 557. On neither of those occasions did the intervenors raise the question now argued. The question is not mentioned in either of those opinions. As noted, the case has been litigated for several years. We are of opinion and hold that the question now argued, that certain injuries of the intervenors may have come from "abandoned or unused materials" under the terms of the policy, has been waived.

## VI.

In their notices of appeal, the intervenors stated that they appealed to this court the district court's order of June 7, 1997, granting sum-

mary judgment to Liberty Mutual Insurance Company. The intervenors have not pursued this argument on appeal and did not address it in their briefs. The intervenors failed to comply with Rule 28 of the Federal Rules of Appellate Procedure in that the intervenors' opening brief neither mentions the order granting summary judgment to Liberty Mutual nor requests that we reverse the order. The briefs contain no argument or citation to authority which would support reversing the district court's order. Counsel for the intervenors did not address the district court's order at oral argument. Any claims included in the notice of appeal but not addressed in a party's brief or at oral argument are waived. *Shopco Dist. Co. v. Commanding General*, 885 F.2d 167, 170 n.3 (4th Cir. 1989) ("The Fifth Amendment claims were included in the notice of appeal, but not thereafter briefed or argued. Accordingly, these claims are waived because appellant did not comply with the requirements of Rule 28 . . . ."). We hold the intervenors have abandoned their claim regarding the district court's June 7, 1997 order granting summary judgment to Liberty Mutual, and we decline to address it.

## VII.

Travelers' cross-appeal, in which it contests the district court's decision that Liberty Mutual's lost policies for the years 1959 to 1962 are unenforceable, is moot. Because we affirm the district court's decision that the pro-rata allocation method is correct under Maryland law, Travelers no longer has an interest in having Liberty Mutual's lost policies enforced and has so advised in notice of cross-appeal. Travelers' motion for leave to assert claims for contribution against Liberty Mutual therefore is moot. The end and effect of this decision is that the district court's decision with respect to the lost Liberty Mutual policies is not disturbed.

The orders of the district court appealed from are accordingly

*AFFIRMED.*[3]

---

[3]The intervenors have urged us to refer to the Maryland Court of Appeals the questions of Maryland law involved in this case, while Travelers has opposed such action. We decline so to do. Indeed, the arguments of each to the district court were the opposite, as Travelers proposed that the district court certify the "allocation" issue to the Maryland Court of Appeals, and the intervenors opposed certification at that time. (Intervenors' br. p.54, Travelers' br. p.29, JA p.1446, 1451).