**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CANADA LIFE ASSURANCE COMPANY,
<u>Plaintiff-Appellant,</u>

v.

ESTATE OF HARVEY M. LEBOWITZ;

No. 98-1967

EUNICE LEBOWITZ; MAX E.
BLUMENTHAL, Co-Personal
Representative,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-97-726-L)

Argued: May 5, 1999

Decided: July 20, 1999

Before ERVIN, WILKINS, and KING,
Circuit Judges.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in
which Judge Wilkins and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Michael Sean DeBaugh, LORD & WHIP, P.A., Balti-
more, Maryland, for Appellant. Melvin Julius Sykes, Baltimore,
Maryland, for Appellees. **ON BRIEF:** J. Paul Mullen, LORD &

WHIP, P.A., Baltimore, Maryland, for Appellant. Sandra A. Strempel, DINSE, KNAPP & MCANDREW, Burlington, Vermont, for Appellees.

_____

**OPINION**

ERVIN, Circuit Judge:

The question before this Court is whether a claimant who never received written notice of his right of conversion as guaranteed by an insurance policy governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001-1461 (West 1999), is entitled to benefits. Canada Life Assurance Company ("Canada Life") issued a group life insurance policy ("Policy") to the law firm of Whiteford, Taylor, and Preston, L.L.P. ("WTP"). Harvey M. Lebowitz ("Lebowitz"), a senior partner at WTP, left WTP for another law firm, Blades and Rosenfeld, P.A. Lebowitz died without exercising his right to convert the Policy into an individual policy.

Canada Life first filed this action in district court seeking a declaration that at the time of his death Lebowitz was not covered by the Policy. Lebowitz's wife, Eunice Lebowitz, and his estate (the "Estate") filed a counterclaim for benefits. Both sides filed motions for summary judgment. The district court granted summary judgment to the Estate. Canada Life appealed.

Although Canada Life may not have been required by ERISA to provide Lebowitz with written notice of his right of conversion, since Canada Life promised in its Policy documents to provide such notice, this Court must enforce that promise and ensure that Lebowitz received adequate written notice. Because Canada Life failed to give Lebowitz adequate written notice of his right of conversion, we affirm the grant of summary judgment to the Estate.**1**

_____

**1** In their submissions to this Court, both parties originally agreed that the district court had abused its discretion in awarding attorneys' fees to the Estate without explaining its reasoning as required by Quesinberry v. Life Insur. Co. of North America, 987 F.2d 1017, 1029 (4th Cir. 1993). Because the district court subsequently explained and reversed its award of attorneys' fees in a court document dated February 19, 1999, and because Canada Life conceded during oral argument that this action mooted the attorneys' fees issue, we do not address it herein.

2

I.

Canada Life became WTP's group life insurance carrier on June 1, 1995. The life insurance policy was a Policyholder Administered Group Life Benefit policy. WTP was designated the Policyholder/Plan Sponsor, Plan Administrator, and the Agent for Service of Legal Process on the Policyholder. As Plan Administrator, WTP had "the exclusive and absolute discretion to interpret and administer the [Policy] in accordance with its terms." Canada Life was designated the Claims Administrator. On June 1, 1995, the Summary Plan Description document (SPD) of the Policy was distributed to all partners, associates, and employees of WTP.

Lebowitz became a senior partner at WTP on February 25, 1991. Sometime in September 1995, Lebowitz decided to resign from WTP at the end of September and take on a new position at another law firm, Blades and Rosenfeld.

Lebowitz never billed more than 30 hours a week from June 1995, when the Policy first became active, until his departure at the end of September. Canada Life's Group Life Plan document (GLP) states that the Policy insures "full-time employees who work at least 30 hours per week on a regular basis as employees." J.A. at 80.

Despite his billable hours, Lebowitz was still considered a full-time senior partner by WTP. WTP's Managing Partner Ward B. Coe, III ("Coe") testified that Lebowitz was "treated and recognized as a full-time partner" during the period of his partnership with WTP. Although WTP "encouraged all partners to record all time spent on firm-related matters whether billable or nonbillable," partners were not required to record nonbillable but beneficial activities such as client relations, management, marketing activities, and mentoring. As a matter of firm practice, all partners worked full time for the firm. Coe stated that "[a]s one of our most senior partners, Mr. Lebowitz's recorded time was not necessarily indicative of the time he spent working for the firm." Additionally, WTP paid Lebowitz's insurance premiums for the months of June through September. On the basis of this evidence, the district court concluded that "Lebowitz was a full-time partner at WTP from February 25, 1991 until September 29, 1995" and "as a full-time partner he was understood to be covered

3

under the Policy." <u>Canada Life Assurance Co. v. Lebowitz</u>, No. CA-97-726-L, at 2 (D. Md. June 2, 1998) (unpublished memorandum opinion).

Some time in September 1995, before Lebowitz left WTP, WTP's Human Resources Manager Catherine Xanthakos ("Xanthakos") conducted an exit interview with him to discuss how his group health and life insurance coverage would be affected by his departure. Xanthakos testified she advised Lebowitz that he would not be covered as of October 1, 1995, and that he had 30 days after that date to convert his group life insurance into an individual policy. She also testified that she gave Lebowitz a blank Canada Life "Group Conversion Application" and told him that he needed to complete the application and pay the necessary premium in order to exercise his life insurance right of conversion. On the top of this Application under the heading "Important," in 9-point type, were the following words,"Please remit the completed form and required premium to the address shown above, within 31 days from the date your coverage under the group policy terminated." Xanthakos added that if Lebowitz needed any additional information, he should call Canada Life's toll-free help number listed at the top of the form.

Xanthakos does not recall when in September this meeting took place. She kept no written record of her conversation with Lebowitz. Although she did provide Lebowitz with a written letter documenting his health insurance right of conversion as required by the Consolidated Omnibus Budget Recovery Act ("COBRA"), 29 U.S.C.A. §§ 1161, 1166 (West 1999), she did not provide him with a similar letter documenting his life insurance right of conversion. Although Lebowitz wrote Xanthakos a letter stating that he did not intend to convert his health insurance, he never gave Xanthakos any indication as to whether he intended to convert his life insurance.

Lebowitz left WTP on September 29, 1995 and shortly thereafter began working at Blades and Rosenfeld, P.A. On November 4, 1995, Lebowitz died. Although Blades and Rosenfeld provided Lebowitz with a new life insurance policy, a "Record and Change Form" included in the joint appendix indicates that his new life insurance policy was not effective until December 1, 1995. <u>See</u> J.A. at 101.

4

Canada Life filed suit in district court on March 11, 1997, seeking a declaration that it was under no obligation to pay the Estate. The Estate filed a counterclaim on May 19, 1997, seeking payment of the $500,000 principal, accrued interest, costs, and attorneys' fees. Both sides filed motions for summary judgment. On March 3, 1998, the district court granted summary judgment to the Estate. Canada Life appealed.

II.

We review de novo the district court's decision to grant summary judgment. In so doing, we must view the evidence in the light most favorable to Canada Life. See Fed. R. Civ. P. 56; State of Maryland Dept. of Natural Resources v. Kellum, 51 F.3d 1220, 1223 (4th Cir. 1995). Since this is an appeal of a final decision of a district court, this Court has jurisdiction pursuant to 28 U.S.C.A.§ 1291 (West 1993).

It is undisputed that ERISA governs Canada Life's Plan. When determining the award of benefits under any ERISA policy, this Court must begin by examining the plain language of the policy itself. See Lockhart v. United Mine Workers Assoc. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993). Ambiguous terms of an ERISA policy are construed against the drafter in accordance with the reasonable expectations of the insured. See Jenkins v. Montgomery Indus., Inc., 77 F.3d 740, 743 (4th Cir. 1996).

This Court will enforce the plain language of an insurance policy unless it is in violation of ERISA. If a policy fails to incorporate the minimum protections required by ERISA, then this Court will require that the policy be rewritten to incorporate such protections. Of course, a policy may provide procedural protections above what is minimally required by ERISA. In this case, this Court will still enforce the plain language of policy provisions even if those provisions are not required by ERISA.

Although it is unclear whether ERISA requires written notice of the right of conversion,[2] since the plain language of Canada Life's Policy

_____

[2] Although this Court has held that an ERISA policy must offer the right of conversion, we have not addressed whether ERISA requires writ-

5

documents requires such written notice, Canada Life was required to give Lebowitz written notice.

III.

It is undisputed that Lebowitz did not exercise his right of conversion before he died. It is also undisputed that if Lebowitz did receive written notice of his right of conversion as guaranteed by the Policy then Canada Life is entitled to a declaratory judgment. According to the plain language of the Policy documents, to recover benefits on summary judgment the Estate must prove that there is no question of material fact that Lebowitz (1) was covered by the Policy, (2) never received adequate written notice, and (3) died within his extended period of conversion.

A.

To be eligible for conversion, Lebowitz must have been covered by the Canada Life Policy. WTP and Canada Life disagree on the issue of coverage. WTP considered Lebowitz to be covered whereas Canada Life did not. Since we conclude that WTP possessed final authority to decide who was covered by the Policy, we accept WTP's determination as controlling and conclude that there is no question of material fact that Lebowitz was covered by the Policy.[3]

WTP considered Lebowitz to be covered under the Policy. Coe testified that WTP "treated and recognized [Lebowitz] as a full-time partner."[4] WTP also paid Lebowitz's insurance premiums during the

_____

ten notice of such a right. See White v. Provident Life & Accident Insur. Co., 114 F.3d 26, 28 (4th Cir. 1997) (the right of conversion of a life insurance policy is a benefit required by ERISA).

[3] Since we conclude that there is no question of material fact that Lebowitz was covered, we do not address the Estate's argument raised on cross-appeal that Lebowitz was actually employed by WTP until October 31, 1995.

[4] Since WTP is a limited liability partnership incorporated in Maryland, it is subject to Maryland law. Search of WESTLAW, Corp-All Library

relevant period. As conceded by Canada Life, WTP was solely responsible for determining each month (1) "which employees qualified for life insurance coverage" and (2) the amount of premium to be paid to Canada Life "based on this determination." Brief for Appellant at 9. Thus, when WTP paid Canada Life insurance premiums in Lebowitz's name it must have considered Lebowitz qualified for life insurance coverage. We find the fact that WTP regularly paid Lebowitz's insurance premiums as conclusive evidence that WTP considered Lebowitz covered under the Policy.

Canada Life argued that Lebowitz was not covered because the Policy required that an employee must regularly work at least 30 hours a week and the Estate failed to prove that Lebowitz had worked that much. In support, Canada Life cited provisions from both the SPD and the GLP requiring a full-time employee to work at least 30 hours a week on a regular basis to be eligible for coverage. See J.A. at 49 (SPD), 80 (GLP).

Since WTP considered Lebowitz covered and Canada Life did not, we must determine who had the final say concerning coverage. To make such a determination, we must ascertain who was the ultimate fiduciary with regard to coverage. Under ERISA, a fiduciary is "anyone . . . who exercises discretionary control or authority over the policy's management, administration, or assets." Mertens v. Hewitt Assoc., 508 U.S. 248, 251 (1993).

_____

(May 19, 1999); Search of LEXIS, Incorp Library, Allsos File (May 19, 1999). Although WTP is a limited liability partnership, under Maryland law it is still liable for the representations of its agent partners. See Md. Code Ann. § 9-307 (Michie 1993 & Supp. 1994) (defining "limited liability partnership"). Coe was the Managing Partner of WTP. Lebowitz was a partner at WTP. According to then-current Maryland law, Coe had a duty to render "true and full information" concerning Lebowitz's partnership status to Lebowitz's Estate. See Md. Code Ann. § 9-403 (Michie 1993) (entitled "Duty of partners to render information"). Since Coe had a duty to render this information, WTP is bound by Coe's admission. See Md. Code Ann. § 9-303 (Michie 1993) (entitled "Partnership bound by admission of partner").

7

It is clear from the plain language of the SPD and the surrounding circumstances that WTP was the ultimate fiduciary with regard to coverage. The SPD designated WTP as the "Plan Administrator" with "the exclusive and absolute discretion to interpret and administer the [Policy] in accordance with its terms." J.A. at 48. By the very nature of the position, a plan administrator is a fiduciary with respect to her own policy.**5**

Although Plan Administrator WTP delegated its "exclusive and absolute discretion" over the handling and adjudication of claims to Claims Administrator Canada Life,**6** the surrounding circumstances make clear that WTP retained "exclusive and absolute discretion" over the determination of employee coverage and premium payments. Sole responsibility for determining employee coverage and premium payments under the Policy rested with WTP's Human Resources Manager Catherine Xanthakos. Under this arrangement, Canada Life did not independently verify WTP's monthly determinations of employee eligibility and corresponding premiums. **7** Thus, WTP was

---

**5** See 29 U.S.C.A. § 1002(16)(A)(i) (West 1999) (defining "administrator" as "the person specifically so designated by the terms of the instrument under which the policy is operated"); Klosterman v. Western General Management, Inc., 32 F.3d 1119, 1122 (7th Cir. 1994) (defining "fiduciary"); 29 C.F.R. § 2509.75-8 (D-3) (1998) ("[A] plan administrator . . . must, [by] the very nature of his position, have `discretionary responsibility in the administration' of the plan. .. .").

**6** The SPD not only states that any administrative appeals will be directed to Canada Life but also that "Canada Life will make the final decision on the claim." J.A. at 56.

**7** Canada Life conceded this arrangement in its brief:

> The Canada Life policy was self-administered . This meant, in part, that WTP, as the Policyholder, was responsible for determining each month's premium. [A.98]. Responsibility for this task belonged to the firm's Human Resources Manager, Catherine Xanthakos. [A.43-45]. Each month, Ms. Xanthakos independently determined which employees were qualified to receive Canada Life's insurance coverage, and then calculated the total premium based on this determination. [A.45]. The premiums were sent to Canada Life on a monthly basis.[A.45].

Brief of Appellant at 6 (emphasis added).

8

the ultimate fiduciary with regard to employee coverage. When WTP paid Lebowitz's insurance premiums, therefore, it determined that he was covered under the Policy. Since WTP's decision was controlling, further proof of Lebowitz's coverage was unnecessary. There is no question of material fact that Lebowitz was covered under the Policy.

B.

Even though Lebowitz was covered by the Policy, the Estate still must prove that Lebowitz failed to receive adequate written notice of his right of conversion. We hold that there is no question of material fact that Canada Life failed to provide Lebowitz adequate written notice about his right of conversion as required by the plain language of the Policy.

Canada Life was required by the plain language of its own Policy documents to provide Lebowitz with written notice of his right of conversion. Under "Notice of Conversion Right," the GLP states:

> [WTP] will be required to give each person at least 15 days written notice prior to the date on which his right to convert would expire. If the person has not received such notice the person will have an additional 15 days from the date he is notified in which to convert. The life insurance coverage will not extend beyond the 31st day after the date the group insurance terminates, and the right to convert will not extend more than 60 days beyond the initial 31 day conversion period.

J.A. at 89.

_____

The GLP further supports the conclusion that WTP retained final authority concerning employee coverage and premium payment. The GLP states under "Self-Administration" that "[a]ll premium payments that would otherwise be calculated by us at our Head Office in accordance with the terms of this policy will be calculated by you. . . ." J.A. at 98 (emphasis added).

9

The GLP states that coverage ends "[o]n the last day of the month in which the person's employment terminates." J.A. at 84. Since Lebowitz's last day of work was September 29, 1995, his conversion period began on October 1, 1995. If Lebowitz never received proper written notice, his conversion period became extended to the maximum "60 days beyond the initial conversion period," which was December 30, 1995. See Lebowitz, No. CA-97-726-L, at 6.

The issue is whether Lebowitz received proper written notice under the Policy. Although the GLP requires written notice, it does not define "written notice." Canada Life argued that Lebowitz received proper notice two ways. First, Canada Life argued that since Xanthakos conducted an exit interview with Lebowitz, Canada Life complied with the purpose of the notice provision in good faith. Second, Canada Life argued that the SPD and conversion application constituted sufficient written notice.

We reject both of these arguments because we construe the plain meaning of "written notice" to require something in writing above and beyond what was previously received.

1.

Canada Life argued that it satisfied the purpose and spirit of the written notice provision because Lebowitz, as an experienced attorney, had enough information from his exit interview and the SPD to make an informed decision concerning conversion.

The facts of this case do not necessarily support Canada Life's inference. After Lebowitz received Xanthakos' letter notifying him of his health insurance right of conversion, he wrote a letter to Xanthakos stating that he did not intend to convert his health insurance. In contrast, Xanthakos never wrote him a letter notifying him of his life insurance right of conversion and he never wrote anything concerning his life insurance right of conversion.

More importantly, we must assume that without adequate written notice, Lebowitz was not aware of his life insurance right of conversion. A plan administrator must administer the provisions of a policy

10

"consistently." <u>DeNobel v. Vitro Corp.</u>, 885 F.2d 1180, 1188 (4th Cir. 1989) (holding that a plan administrator that does not administer policy provisions consistently abuses its discretion under ERISA). Even if Lebowitz indeed possessed enough information to make an informed decision, notice must be given consistently and uniformly to all participants regardless of their personal experience or individual acumen.

2.

Canada Life also argued that the SPD and conversion application constituted sufficient written notice.

The SPD cannot constitute written notice of the right of conversion because the SPD is routinely given to every person when her coverage begins. Since the GLP already requires that every person receive a copy of the SPD upon joining the Plan (<u>see</u> J.A. at 94), such a construction would render the additional "written notice" requirement in the GLP superfluous.

The conversion application cannot constitute written notice because it does not provide sufficient information. We rule that adequate written notice here must be in writing and explicitly include: (1) when the group coverage will expire, (2) when the right of conversion will expire, (3) the procedure to follow in order to convert the group policy into an individual policy, and (4) the amount of premium required to complete conversion. Since the conversion application did not provide this minimal information, it did not constitute "written notice" as required by the Policy.

Thus, we conclude that there is no question of material fact that Lebowitz never received proper written notice, as required by the plain meaning of the GLP, before his death.

C.

Since Lebowitz died during his extended conversion period, he exercised his right of conversion according to the plain language of the Policy. Lebowitz died on November 4, 1995. Since he never

11

received proper written notice, his conversion period was extended to December 29, 1995.

The GLP states that

> [i]f [a claimant] should die during the conversion period, and prior to becoming insured under a policy again, an amount of insurance equal to the maximum amount for which [the claimant] was entitled to convert will be paid as a death benefit.

J.A. at 88. Thus, since Lebowitz died during the conversion period, and prior to becoming insured under another policy, his Estate is entitled to the maximum amount of insurance for which he was entitled to convert.

On appeal, Canada Life argued that while Lebowitz's conversion option may have been extended to December 29, 1995, his coverage ended on September 30, 1995. In support, Canada Life cited language from the GLP stating that "[a]ll of a person's insurance under this policy will terminate . . . [o]n the last day of the month in which the person's employment terminates." J.A. at 84.

We disagree for two reasons. First, such an interpretation would render the aforementioned language concerning the death of a claimant before the expiration of her conversion period superfluous. See J.A. at 88. Second, Canada Life waived this argument because it failed to raise it below. See Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 342 (4th Cir. 1992).

We conclude that since there is no question of material fact, the Estate is entitled to receive payment of Lebowitz's maximum death benefit of $500,000 and accrued interest.

IV.

For the reasons set forth above, the district court's grant of summary judgment in favor of the Estate is affirmed.

AFFIRMED

12