NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0669n.06
Filed: September 7, 2007

Case No. 06-3245

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL FENDLER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CNA GROUP LIFE ASSURANCE | ) | DISTRICT OF OHIO |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  BATCHELDER and GRIFFIN, Circuit Judges; PHILLIPS[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge.  Plaintiff Michael Fendler ("Fendler") sought

life-insurance benefits under the employee benefit plan of his deceased mother, Eleanor Fendler

("Eleanor").  Eleanor enrolled in the relevant life-insurance policy as part of her employment with

GoJo Industries, Inc. ("GoJo"), and GoJo, in turn, contracted with Defendant CNA Group Life

Assurance Company ("CNA") to underwrite the policy.  GoJo, as plan administrator, thought

Fendler was entitled to the insurance proceeds, but CNA, as claims administrator, read the plan

differently and denied Fendler's claim.  Fendler filed suit in federal district court challenging CNA's

denial of his claim for benefits protected under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 et seq.  The district court denied Fendler's request to supplement the

---

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

administrative record, applied the arbitrary and capricious standard of review, and denied Fendler's claim. On appeal, Fendler argues that the district court should have granted his request to supplement the administrative record, that the district court erred in applying the arbitrary and capricious standard of review, and that he was in fact entitled to benefits under the plan. We conclude that the district court properly denied Fendler's request to supplement the administrative record, and that, regardless of what standard of review applies, Fendler was not entitled to benefits under the express terms of the plan. We **AFFIRM** the judgment of the district court.

## I.

Eleanor worked as Director of Skin Care Technology for GoJo and, as part of her employment, participated in GoJo's employee benefit programs. Only "full-time employees" of GoJo qualify as members of a class eligible for life-insurance coverage. Under the terms of the plan, an employee is considered to be "employed on a full-time basis" if she is "actively at work an average of 40 or more hours per week at [her] customary place of employment." An employee's coverage terminates the first day of the policy month after she is "no longer a member of a class eligible for insurance." But absence from work because of "disability for life insurance" will not be treated as a termination of membership in an eligible class for "up to 9 months" after the onset of the disability. If an employee is unable to return to active work and cannot continue coverage under the policy, she may apply for the "conversion privilege," which allows her to convert her group policy to an individual policy. To utilize the conversion privilege, the employee must apply to CNA within 31 days after the termination of her coverage.

The Summary Plan Description ("SPD") states that GoJo, as plan administrator, "has the discretionary authority to determine the eligibility for benefits and to construe the terms of the

2

[p]lan." The SPD also states that "[a]ny denial of a claim for benefits will be provided by the [Plan] Administrator," that a beneficiary "may appeal any denial of a claim by filing a written request for a full and fair review to the Plan Administrator," and that "[t]he full and fair review will be held and a decision rendered by the Plan Administrator." The SPD also incorporates the policy provisions, stating that "[b]enefits under the [p]lan are provided in accordance with the provision of [the policy] issued by [CNA]," and the policy provides that CNA will pay life-insurance proceeds when it receives "due proof" of a covered employee's death.[1]

Eleanor last physically reported to work on November 20, 2001; she was diagnosed with metastatic breast cancer the following day and never returned to work at GoJo's offices. She immediately filed for and obtained short-term disability benefits through GoJo's disability-insurance provider. The short-term disability benefits were authorized for a six-month period, set to expire in May 2002. During this six-month period, Eleanor worked from home, and GoJo continued to pay her full salary and benefit premiums until the day of her eventual death. In April 2002, GoJo grew concerned for the security of Eleanor's life-insurance benefits and, as a result, contacted CNA employee, Linda Miller, who assured GoJo that "there would be no problem with [Eleanor's] benefit[s]." Around this same time, Eleanor applied for and obtained long-term disability benefits, which began when her short-term benefits expired in May 2002.

In June 2002, Eleanor applied for waiver-of-premium coverage under the life-insurance policy, which would extend her coverage free of charge during the period of her disability. In July

_____

[1]CNA asserts that other "uniform provisions" of the plan are relevant to our resolution of this case. These "uniform provisions" state that "[w]ritten notice of claim must be given to [CNA] within 30 days after the loss begins," that "[w]ritten proof of loss must be sent to [CNA]," and that CNA will pay benefits as soon as it receives "due written proof of loss." These provisions, however, apply only "to Accidental Death and Dismemberment Insurance." Because this case involves life-insurance benefits, not accidental death insurance, these provisions are entirely irrelevant.

3

2002, CNA denied Eleanor's application for waiver-of-premium coverage. An insured employee qualifies for waiver-of-premium coverage only if she becomes totally disabled before she reaches age 60. CNA noted that Eleanor's "total disability" or "date of loss" began on November 20, 2001, and because Eleanor was 62 years old at that time, she was not entitled to waiver-of-premium coverage. In its denial letter, CNA informed Eleanor that she could convert from group coverage to an individual policy, but she must do so before the expiration of her conversion period in September 2002. Neither GoJo nor Eleanor filed the relevant paperwork to convert Eleanor's coverage.

Eleanor died in October 2002, and Fendler, as beneficiary of his mother's life-insurance policy, submitted a proof of death form to CNA. CNA denied the benefits claim, finding that Eleanor's coverage lapsed in September 2002, when her conversion period expired. GoJo, acting on Fendler's behalf, appealed CNA's denial, arguing that Eleanor's membership in a class eligible for insurance could not be terminated until nine months after her "disability" began, and asserting that Eleanor did not become "disabled for life insurance" until May 2002 — the date that her long-term disability benefits began. Thus, according to GoJo's argument, because Eleanor's membership in a class eligible for insurance did not expire until nine months after May 2002, she was an eligible employee at the time of her death in October 2002. CNA denied Fendler's claim for a second time, but referred the claim to the appeals committee for a formal review. Shortly thereafter, CNA's appeals committee affirmed the denial of benefits.

Fendler then filed suit against CNA in federal district court, asserting a wrongful denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), alleging a breach of fiduciary duty under ERISA § 409(a), 29 U.S.C. § 1109(a), and requesting attorneys' fees under 29 U.S.C. §

4

1132(g)(1). Fendler filed a motion seeking permission to engage in limited discovery and to supplement the administrative record. The district court granted Fendler's request for limited discovery to allow him an opportunity to show that the record should be supplemented because of a "procedural challenge to the administrator's decision." This limited discovery did not uncover evidence of a procedural deficiency in CNA's review, and the court entered an order prohibiting Fendler from supplementing the record. In that order, the court also held that CNA's denial of Fendler's benefits claim would be "reviewed under the deferential arbitrary and capricious standard." The parties submitted cross-motions for judgment on the administrative record, and the district court granted judgment in favor of CNA, finding that the denial of benefits was not arbitrary and capricious. The court agreed with CNA that Eleanor ceased being a "full-time employee," as that term is defined in the plan, in November 2001, on the date when "she last reported to work at her [GoJo] office," and that Eleanor was not an eligible employee at the time of her death. On appeal, Fendler challenges the district court's denial of his request to supplement the administrative record and the district court's order affirming CNA's denial of his benefits claim, specifically contending that the court erred by applying the arbitrary and capricious standard of review.

**II.**

We first consider the district court's denial of Fendler's request to supplement the administrative record. The district court, when asked to review an administrator's denial of ERISA benefits, should conduct a review "based solely upon the administrative record," *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998), and generally should not consider "evidence not presented to the plan administrator," *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). "The only exception to the . . . principle of not receiving new evidence at the district

5

court level arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618. Fendler's complaint does not allege a lack of due process, administrator bias, or any other procedural deficiency. Fendler later raised, in his motion for summary judgment and his appellate brief, procedural infirmities concerning an incomplete administrative record, but these allegations are an insufficient basis upon which to allow him to supplement the administrative record.

In the first of these after-the-fact procedural arguments, Fendler contends that CNA failed to investigate whether its employee, Linda Miller, told GoJo that Fendler's life-insurance benefits would be secure so long as GoJo continued to pay Eleanor's premiums. Aside from the fact that Fendler did not include this procedural challenge in his complaint, this claim lacks merit because the alleged phone call between Miller and GoJo occurred in April 2002, and the administrative record reflects that CNA sent Eleanor a letter in July 2002, which informed her that she needed to convert to an individual policy in order to maintain her coverage.[2] Because this subsequent letter expressly informed Eleanor that her insurance coverage was in jeopardy, we do not find any merit in Fendler's procedural claim, and thus the district court did not err in refusing to supplement the administrative record to support a facially meritless claim.

In Fendler's other procedural contention, he argues that the district court should have allowed him to supplement the administrative record because CNA controlled the contents of the administrative record and thus had the ability to exclude evidence favorable to his claim. Again,

---

[2]Fendler argues that Eleanor did not receive this letter, but provides absolutely no evidence to support this contention.

Fendler did not include this procedural challenge in his complaint, but merely asserts it as an after-the-fact justification for his request to supplement the record. Nearly every ERISA claimant could assert such an argument, and we find that it is an insufficient basis upon which to allow supplementation of the administrative record. While it is true that CNA *compiled* the administrative record, CNA did not *control* the contents of that record. Both Fendler and GoJo could have submitted evidence in support of Fendler's claim, and CNA clearly informed Fendler and GoJo of their right to submit additional evidence. They chose not to do so. Thus, to the extent evidence is missing from the administrative record (and Fendler does not identify any particular pieces of evidence that CNA excluded from the record), Fendler and GoJo are to blame. Fendler cannot now seek to make a complete evidentiary record, having failed to do so during his administrative appeal. We therefore affirm the district court's denial of Fendler's request to supplement the administrative record.

**III.**

We next consider the district court's denial of Fendler's claim for benefits. We review *de novo* whether the district court applied the proper standard of review when reviewing an administrator's denial of ERISA benefits. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001). The default rule is that courts ordinarily review a denial of ERISA benefits under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). But where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts apply an arbitrary and capricious standard of review. *Id.*; *see also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). In order for a court to apply the arbitrary and capricious standard, the grant of discretion to the

administrator must be clear. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (*en banc*).

The district court applied the arbitrary and capricious standard of review and rejected Fendler's claim. On appeal, Fendler makes much of the fact that both GoJo, as plan administrator, and CNA, as claims administrator, were given discretion to administer the plan. It is not unique to have a situation where the plan administrator and the claims administrator share discretion over the administration of the plan. *See Rud v. Liberty Life Assurance Co. of Boston*, 438 F.3d 772, 774 (7th Cir. 2006) (noting that administration of the benefit plan was "divided" between the plan administrator and the claims administrator). To be sure, the plan documents here are not entirely clear and unambiguous in their delegation of discretion to both GoJo and CNA. The clearest grant of discretion in the plan documents is found in the SPD, which explicitly states that GoJo "has the discretionary authority to determine the eligibility for benefits and to construe the terms of the [p]lan." We have previously held that this sort of language confers discretion on the plan administrator and thus requires application of the arbitrary and capricious standard of review. *See McCartha v. Nat'l City Corp.*, 419 F.3d 437, 442 (6th Cir. 2005) (noting that discretion was conferred by the provision in the plan stating that the plan administrator shall have the power "to construe and interpret this [p]lan . . . and to decide all questions of eligibility"). But the plan itself confers discretion on CNA, stating that "[p]ayment will be made upon [CNA's] receipt of due proof of [the insured's] death." Our circuit has repeatedly held that this "due proof" language confers discretion on the claims administrator to determine what type of proof is "due," such that the court must apply the arbitrary and capricious standard of review. *See, e.g., Leeal v. Cont'l Cas. Co.*, 17 F. App'x 341, 343 (6th Cir. 2001) (unpublished case); *Carpenter v. CNA, Cont'l Cas. Co.*, 96 F.

8

App'x 993, 994 (6th Cir. 2004) (unpublished case).

Faced with these seemingly conflicting grants of discretion, Fendler argues that the district court should have applied the *de novo* standard of review because CNA's denial of his claim was based entirely on plan interpretation, which was delegated to GoJo, not on factual determinations, which CNA had discretion to make. Implicit in this argument is that GoJo, rather than CNA, was the proper party to review Fendler's claim for benefits, and we would therefore review *de novo* the denial. *See Sanford*, 262 F.3d at 597 (holding that we review *de novo* a benefits denial made "by a body other than the one authorized by the procedures set forth in [the] benefits plan.") But the standard of review is not dispositive in this case, because even under the most rigorous standard, i.e., *de novo* review, we must conclude that, under the express terms of the plan, Fendler is not entitled to the benefits he seeks.

Although there was much discussion at the administrative level about whether Eleanor qualified for waiver-of-premium coverage and whether Eleanor converted her group policy to an individual policy, both Fendler and CNA agree on appeal that Eleanor was not eligible for waiver-of-premium coverage and that Eleanor did not attempt to convert to an individual policy. We thus focus on whether Eleanor was a member of a class eligible for insurance at the time of her death. The plan states that an individual's coverage terminates the first day of the policy month after she is "no longer a member of a class eligible for insurance." An individual is a member of a class eligible for insurance if she is an "active, full-time employee[]" of GoJo, meaning that she must be "actively at work an average of 40 or more hours per week at h[er] customary place of employment." It is undisputed that Eleanor did not report to GoJo's offices after November 20, 2001. Both Eleanor's waiver-of-premium application and the proof of death form submitted by Fendler

9

acknowledged that Eleanor last physically reported to work on that date. Even though she may have continued to work from home after November 20, 2001, after that date she never again worked at her "customary place of employment."

Fendler argues that because her absence from work was due to a disability, the terms of the plan extended her membership in a class eligible for insurance. The relevant plan provision states that if an employee is absent from work due to "disability for life insurance," her absence will not terminate her membership in an eligible class for a period of "up to nine months." Fendler contends that Eleanor's "disability for life insurance" — a term not defined by the plan itself — began in May 2002, when she obtained long-term disability benefits. But Fendler's argument is self-defeating. The plan's provision that absence from work will not be treated as a termination of eligibility for the insurance for up to nine months applies only if the absence from work is due to disability for life insurance. If Eleanor's disability for life insurance did not begin until May 2002, then her absence from work from November 20, 2001, until May 2002, was not due to disability for life insurance. She therefore ceased to be eligible for coverage on the first day of the policy month after November 20, 2001, because as of that date she was neither working "an average of 40 or more hours per week at h[er] customary place of employment" nor was she absent due to "disability for life insurance." Thus, this argument undermines, rather than advances, Fendler's claim.

We conclude, as did CNA, that Eleanor became "disabled for life insurance" on November 20, 2001, when her doctor diagnosed her with breast cancer and she stopped physically reporting to work. Accordingly, her membership in a class eligible for insurance coverage terminated nine months later, on August 20, 2002. It is therefore clear that when Eleanor passed away in October 2002, she was no longer an eligible employee covered under the life-insurance plan. Any reasonable

10

interpretation of the plan must arrive at this unfortunate conclusion.

Fendler argues that this case is analogous to the Fourth Circuit's decision in *Canada Life Assurance Co. v. Lebowitz*, 185 F.3d 231 (4th Cir. 1999). The eligibility question in that case, which is similar to the question in this case, involved whether the employee — a partner at a law firm — regularly worked 30 hours a week. It was undisputed that the employee was working and billing hours for his firm; the eligibility determination depended upon whether there was sufficient evidence that he was working at least 30 hours a week. The employer/plan administrator in that case, like GoJo in the present case, thought the employee was working sufficient hours and was thus eligible for benefits; whereas the insurer/claims administrator, like CNA, deemed the employee to be ineligible. The court concluded that the employer/plan administrator "possessed final authority to decide who was covered by the [p]olicy," "accept[ed] [the employer/plan administrator's] determination as controlling," and "conclude[d] that there [was] no question of material fact that [the employee] was covered by the [p]olicy." *Id.* at 236. Fendler asks us similarly to accept as controlling GoJo's determination that Eleanor was an eligible employee, but here, in contrast to the facts in *Lebowitz*, there is no question that Eleanor was *not* covered by the plan. Eleanor did not ever work "at h[er] customary place of employment" at any time after November 20, 2001, and thus her membership in an eligible class terminated prior to her death. Thus, GoJo, unlike the employer/plan administrator in *Lebowitz*, appears to be insisting that an employee, who is clearly not eligible under the express terms of the plan, is in fact eligible simply because GoJo says she is. GoJo, however, is bound by the terms of the plan, which are not satisfied here, and, for this reason, we find *Lebowitz*

11

to be distinguishable and unpersuasive.[3]

Regardless of which standard of review is applied, we conclude that Eleanor was not a member of a class eligible for insurance at the time of her death and, thus, Fendler, as her beneficiary, was not entitled to the life-insurance benefits. Accordingly, we affirm the district court's denial of Fendler's ERISA claims.

**IV.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[3]Fendler's brief includes other arguments, which do not merit discussion. First, Fendler contends that neither Eleanor nor GoJo received notice of Eleanor's conversion rights after CNA denied her application for waiver-of-premium coverage. The record, however, includes a letter that CNA sent to Eleanor (and apparently copied to GoJo) informing Eleanor that her request for waiver-of-premium coverage had been denied and that she needed to convert her policy. Fendler provides us with no reason to believe this letter did not reach its intended recipients. Second, Fendler argues that the phrases "an average of 40 or more hours per week" and "customary place of employment" are ambiguous. This argument is simply frivolous.