**Robert E. FALCONE, M.D., F.A.C.S., Plaintiff,**

**v.**

**PROVIDENT LIFE & ACCIDENT INSURANCE CO., Defendant.**

Case No. 2:08–cv–300.

United States District Court, S.D. Ohio, Eastern Division.

Sept. 7, 2010.

John Spenceley Marshall, Edward Reilley Forman, Columbus, OH, Louis Abraham Jacobs, Marshall and Morrow LLC, Desert Hot Springs, CA, for Plaintiff.

Brett K. Bacon, Frantz Ward LLP, Cleveland, OH, Emily C. Fiftal, Frantz Ward LLP, Cleveland, OH, for Defendant.

### OPINION & ORDER

ALGENON L. MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on Defendant Provident Life & Accident Insurance Company's ("Provident") Motion for Judgment on the Administrative Record (Doc. 54) and Plaintiff Robert E. Falcone, M.D., F.A.C.S.'s Cross Motion for Judgment on the Administrative Record (Doc. 55). For the reasons explained below, Provident's Motion is **GRANTED** and Dr. Falcone's Cross Motion is **DENIED.**

### II. BACKGROUND

Dr. Falcone applied for and was issued a disability benefits policy, Accident and Sickness Policy No. 34151/06/479603 ("the Policy"), in 1981. At the time, he listed his occupation as "general surgeon," and stated that his duties included "surgery." In 1998, Dr. Falcone became Hospital Vice President at Grant Medical Center ("Grant"), and he remained in that position until 2001. He served as Chief Operating Officer at Grant from 2001 to 2003. In 2003, he became Hospital President at Grant.

On January 28, 2006, while operating a table saw, Dr. Falcone injured three fingers on his left hand: he cut off his index finger; he severed his middle finger; and he nicked his ring finger. He underwent surgery to reattach his fingers, and he suffered a "non-union" of a surgical fusion at one joint.

On or around April 21, 2006, Dr. Falcone submitted a disability claim to Provident under the Policy, claiming "Total Disability". The Policy defines "Total Disability" as "your inability to perform the duties of your occupation." The Policy does not define "your occupation." Dr. Falcone indicated that, due to his injury, he was unable to perform surgery.

Between 1981, when Provident issued the Policy to Dr. Falcone, and 2006, when Dr. Falcone submitted a claim under the policy, Provident inquired about Dr. Falcone's occupation one time. In 1986, Prov-

ident sent Dr. Falcone an application for additional coverage that asked whether he worked full time in his occupation and had been doing so during the prior 90 days. Dr. Falcone answered that he had, as at that point he was still performing surgeries and had not yet taken on an administrative role at Grant.

When Dr. Falcone submitted his claim in 2006, Provident mailed him various claims forms to complete. Including among those forms was a "Physician Questionnaire." On that form, Dr. Falcone listed his "Job Title" as "President Grant Medical Center." He listed his "field(s) of speciality" as "general surgery." He indicated that he was not practicing full time in his specialty immediately prior to his disability, and that he was actually practicing in "administration." When asked which duties he was unable to perform, he answered, "surgery." Dr. Falcone submitted an attachment to his Physician Questionnaire, which stated in its entirety:

> Insured, prior to injury, had resigned his current administrative position in order to return to his occupation as a general surgeon in solo practice. The first date of the resumption of his activities as a general surgeon was intended to be May 16, 2006.
>
> As a result of the loss of dexterity in his left hand, it is impossible to return to work in his occupation.

Dr. Falcone's Physician Questionnaire indicated no problems performing administrative duties as a result of his injury.

On May 16, 2006, Provident conducted an initial telephone interview with Dr. Falcone. During that interview, Dr. Falcone stated that he had held administrative positions since 1998, and that he had not performed any surgeries during that time. He also stated that he had returned to his Hospital President position after his injury, and that he continued to hold that position until May 15, 2006. He explained that he had resigned as Hospital President in September 2005, but that he stayed on until May 15, 2006 to help Grant transition to a new President. Scott Cooley, Provident's Disability Benefits Specialist, informed Dr. Falcone that Provident was in the process of determining what his occupation was at the time of his injury.

On June 26, 2006, Provident conducted an in-person interview with Dr. Falcone. At that time, Dr. Falcone explained that he had resigned his administrative position and signed a separation agreement that required him to continue performing as a consultant to the hospital for six months, beginning in January 2006. He stated that he intended to return to surgery after the six-month period expired, but that he had not taken any steps toward that goal.

On September 18, 2006, Provident denied Dr. Falcone's claim for disability benefits, reasoning that his "occupation [was] appropriately considered that of President of OhioHealth Medical Center performing administrative duties." Provident concluded that surgery was not one of Dr. Falcone's occupational duties because he had not performed surgery since 1998. Provident noted that Dr. Falcone had no trouble performing the administrative duties he was performing at the time of his injury. While Dr. Falcone had indicated that he planned to return to surgery, Provident concluded that he had not taken any steps toward that return, and was performing consulting services at Grant when he was injured.

On January 24, 2007, Dr. Falcone sent Provident additional information and documentation about his career plans, including witness statements. He explained that he intended to return to surgery after the 24–month non-competition period specified in his separation agreement. He also sent a letter requesting appeal.

Before submitting his claim for appeal, Provident reviewed the additional information submitted by Dr. Falcone. The Vocational Rehabilitation Consultant who performed the review again concluded that Dr. Falcone served an administrative function at the time of his injury. Provident upheld its claim denial. Provident's Quality Control Department then reviewed and approved the decision. Provident informed Dr. Falcone that he could further appeal the denial to the Appeals Department.

On February 6, 2008, Melissa Manger, Lead Appeals Specialist, informed Dr. Falcone's attorney that the denial of benefits was being upheld. Dr. Falcone subsequently initiated this lawsuit.

### III. STANDARD OF REVIEW

■ Federal courts generally review a denial of benefits challenged under ERISA using a de novo standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where, however, "the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan," the decision is reviewed under "the highly deferential arbitrary and capricious standard." *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir.1996). In order for the arbitrary and capricious standard to apply, "the grant of discretion to the administrator must be clear."

Language indicating that the claimant must provide "satisfactory" proof of loss undoubtedly creates the requisite discretion to apply the arbitrary and capricious standard. *See e.g., Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir.1998); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991). Similarly, a requirement of "due written proof of loss" indicates discretion on behalf of the policy

administrator. *See Fendler v. CNA Group Life Assur. Co.,* 247 Fed.Appx. 754, 759 (6th Cir.2007) ("Our circuit has repeatedly held that this 'due proof' language confers discretion on the claims administrator to determine what type of proof is 'due,' such that the court must apply the arbitrary and capricious standard of review.").

■ The parties here disagree on the appropriate standard of review. Dr. Falcone asserts that Provident failed to include the discretionary language necessary to lower the standard of review to arbitrary and capricious. Provident counters that it granted itself discretion, and that the standard should therefore be de novo. To determine the correct standard of review, the Court must look to the language of the Policy.

Dr. Falcone points to a provision of the policy dealing with "Proofs of Loss," which states, "Written proof of loss must be furnished to the Company...." Provident, on the other hand, points to the "Time of Payment of Claim" provision, which states:

Indemnities payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued indemnities for loss for which this policy provides periodic payment will be paid monthly and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

The "Proofs of Loss" provision, which requires only "written proof of loss," does not confer upon Provident any discretion. *See Hoover v. Provident Life and Acc. Ins. Co.,* 290 F.3d 801, 808 (6th Cir.2002) ("The requirement that the insured submit written proof of loss, without more, does not contain 'a clear grant of discretion ... to

determine benefits or interpret the plan.' " (quoting *Perez*, 150 F.3d at 557)). In *Hoover*, however, both the "Proofs of Loss" provision and the "Time of Payment of Claim" provision contained only the "written proof of loss" language. Here, in contrast, the "Time of Payment of Claim" provision contains the discretionary "due written proof of loss language." *See Carpenter v. CNA, Continental Cas. Co.*, 254 F.Supp.2d 730, 736 (S.D.Ohio 2002) (examining "Time of Payment of Claim" provision's "due written proof of loss" language). Because of the inclusion of this discretionary authority with regard to period payments,[1] the Court concludes that the appropriate standard of review in this case is arbitrary and capricious.

The arbitrary and capricious standard of review "requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 300 (6th Cir.2006). The administrator's decision must be "rational in light of the plan's provisions." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir.2004).

## IV. LAW AND ANALYSIS

■ The sole substantive issue for the Court to decide is whether Provident's interpretation of "your occupation" with respect to Dr. Falcone's application for disability benefits is supported by substantial evidence and was the result of a deliberate and principled reasoning process. The term "your occupation" is not defined anywhere in the Policy. Provident concluded that Dr. Falcone's occupation at the time of his injury was the administrative position of Hospital President; Dr. Falcone contends that Provident erred in that determination, and that his occupation was actually general surgeon.

■ Where a plan administrator is given discretion under the plan to interpret its provisions, a court will give great deference to the administrator's interpretation of terms such as "occupation." *See Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296, 299 (6th Cir.2006) ("Although reasonable persons may disagree over the most appropriate methodology for determining a particular employee's 'occupation,' we cannot say that Hartford transgressed the boundaries of its broad discretion under its insurance policy and the ERISA plan to make disability determinations."). *See also Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir.1995) ("[W]e grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms.").

While the Sixth Circuit has not addressed the issue, other circuits have held that, when interpreting the term "occupation," administrators and reviewing courts are to look to "the usual work that the insured is actually performing immediately before the onset of disability." *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 386 (3d Cir.2003); *see also Winter v. Minnesota Mut. Life Ins. Co.*, 199 F.3d 399, 409 (7th Cir.1999) ("Other courts interpreting the term 'regular occupation' have held that term to be unambiguous and that disability benefits should be determined from the occupation of the insured at the time of injury or sickness, not the occupation stated in the insurance policy."). Although Dr. Falcone encourages the Court to ignore the occupation he actually held at the time of his injury, and

---

**1.** The Policy provides for period payments for total disability, which is what Dr. Falcone claims in this case.

instead to look at the occupation Dr. Falcone intended to pursue in the future, he points to no authority, and the Court is aware of none, indicating that the term "occupation" can be interpreted by considering future career plans of the insured. Indeed, Provident considered Dr. Falcone's claims of an intended return to surgery, and concluded, based upon the evidence in the record, that he had taken no steps toward making that return.

Other courts considering this exact issue have concluded that a surgeon who is performing administrative functions, not conducting surgeries, at the time of an injury cannot claim the occupation "surgeon" in an application for disability benefits. *See, e.g., Gross v. UnumProvident Life Ins. Co.,* 319 F.Supp.2d 1129, 1143 (C.D.Cal. 2004) ("[W]hat matters is the occupation in which Plaintiff was engaged at the time he became disabled, not the occupation in which he was board-certified or what occupation he may have practiced at the time he purchased the insurance policy."); *Brumer v. Nat'l Life of Vt.,* 874 F.Supp. 60, 65 (E.D.N.Y.1995) ("[S]ince it is conceded that the last time plaintiff actually performed surgery was no less than thirteen months prior to the time he claims he became disabled, it follows that podiatric surgery was not a material and substantial part of his occupation at the time his disability began ...." (internal quotation marks omitted)).

Provident's determination that Dr. Falcone was acting as a hospital administrator at the time of his injury is supported by substantial evidence in the record. On his Physician Questionnaire, Dr. Falcone listed his "Job Title" as "President Grant Hospital." (PLACL 88.) He also indicated that he was not devoting any of his time to the duty of "surgery," and that he spent 100% of his time performing administrative tasks. (PLACL 88.) Even at the

time he filed his Complaint in this case, Dr. Falcone conceded that "he continued being employed as President of Grant Medical Center until his actual last day of work on May 15, 2006." (Compl. ¶ 34.) While Dr. Falcone's Attachment to Physician's Questionnaire indicated that he planned to return to a career as a general surgeon, he admitted that he did not intend to do so until May 16, 2006, several weeks after his injury. (PLACL 93.) Dr. Falcone also admitted on his Income Protection Claim Form that he returned to work full time as President of Grant Medical Center, and that he had worked in that position as late as April 15, 2006. (PLACL 62).

In addition to the information provided on Dr. Falcone's claim forms, Provident based its decision on information it received from Dr. Falcone during both a phone interview and an in-person interview. During his phone interview, Dr. Falcone stated that he had not performed surgery since 1998, and that he had served as an administrator during that time. (PLACL 151–52.) He also informed Provident that although he had resigned his Hospital President position in September 2005, he was staying on as President until May 15, 2006, in order to help the hospital transition to a new president. (PLACL 151–52.) During his in-person interview, Dr. Falcone indicated that he intended to return to practice as a general surgeon, but that he was committed under a separation agreement to continuing to work as a consultant for Grant for six months beginning in January 2006. (PLACL 255.) He again confirmed that he had not performed surgery since 1998. (PLACL 256.)

When Provident decided, after completing an investigation, to deny Dr. Falcone's claim, he submitted additional information. Provident reviewed that information and upheld the denial. (PLACL 953–57.) Dr.

Falcone then appealed Provident's decision, and the Appeals Department again upheld the decision. (PLACL 1015.) This investigation, review, and appellate process can fairly be deemed a deliberate and reasoned process.

The Court concludes that Provident's decision was not arbitrary and capricious. Provident had the discretion to interpret the term "your occupation" within the Policy. It concluded that, at the time of his injury, Dr. Falcone was actually serving an administrative function, and hadn't performed any surgeries in approximately eight years. This conclusion is supported by substantial evidence in the record, and Provident, though its investigation, consideration of additional materials submitted by Dr. Falcone, and appellate review of the decision, reached a reasonable conclusion based upon a deliberate and reasoned process.

## V. CONCLUSION

Because Provident's decision to deny Dr. Falcone's claim for disability benefits was not arbitrary and capricious, Provident's Motion for Judgment on the Administrative Record (Doc. 54) is **GRANTED** and Dr. Falcone's Cross–Motion for Judgment on the Administrative Record (Doc. 55) is **DENIED.**

**IT IS SO ORDERED.**