RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN WARREN BUTLER, individually and as assignee of Janie Butler,

*Plaintiff-Appellee*,

*v.*

UNITED HEALTHCARE OF TENNESSEE, INC.,

*Defendant-Appellant*.

No. 13-6446

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:07-cv-00465—Tena Campbell, District Judge.

Argued:  August 7, 2014

Decided and Filed:  August 22, 2014

Before:  MOORE, SUTTON and ALARCÓN, Circuit Judges.[*]

---

**COUNSEL**

**ARGUED:**  Christopher F. Heinss, BALCH & BINGHAM, LLP, Birmingham, Alabama, for Appellant.  James C. Wright, BUTLER, VINES AND BABB, P.L.L.C., Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  Christopher F. Heinss, BALCH & BINGHAM, LLP, Birmingham, Alabama, for Appellant.  Ronald C. Koksal, John W. Butler, BUTLER, VINES AND BABB, P.L.L.C., Knoxville, Tennessee, for Appellee.

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

————————————

**OPINION**

————————————

SUTTON, Circuit Judge.   More than nine years ago, Janie Butler checked into a substance-abuse treatment facility to obtain inpatient rehabilitation for her alcohol addiction. She sought coverage for the treatment through her husband's employer-issued ERISA plan run by United Healthcare.  United denied treatment, deeming it medically unnecessary.  After seven years' worth of internal reviews, trips to the district court and remands to the plan for reconsideration, the district court decided that enough was enough.  It held that United had acted arbitrarily and capriciously in continuing to deny the requested coverage.  And it awarded John Butler (her then-husband and the assignee of Janie's plan benefits) the cost of the requested benefits plus prejudgment interest and statutory penalties.  United objects to the decision to grant benefits and to the order to pay penalties.  We affirm the grant of benefits but reverse the penalty award.

I.

Janie Butler struggles with alcoholism.  She began drinking in the eighth grade, and by 2000 she would have five or six drinks a day.  App. R. 24 at 139.  Things got worse as the years passed.  Janie purported to work as an artist from her home but instead "excessively dr[ank] vodka and wine daily."  *Id.* at 277.  She experienced "a number of black outs."  *Id.* at 276.  She also drove while drunk and "had a motor vehicle accident [and] a number of . . . citations" as a result.  *Id.*  Worried that Janie's drinking posed a danger and recognizing that they could not treat her addiction without help, Janie and her family sought professional care.

At first, Janie tried outpatient counseling.  She met with Dr. Kenneth Jobson, a reputable psychiatrist who specializes in addiction.  *Id.* at 269, 276, 278.  The treatment did not work. Despite Dr. Jobson's efforts, Janie "continu[ed] to spiral downward."  *Id.* at 278.  Attempts to treat the addiction escalated.  Janie tried Alcoholics Anonymous, sober sponsors and other outpatient treatments, all to no avail.  Deciding that Janie's "extensive use of [alcohol] and current cravings" required "intensive monitoring and structure to maintain sobriety," United

approved coverage for outpatient treatment at the Ridgeview Institute in mid-August 2004. *Id.* at 135. That failed too. Janie "cont[inued] to drink while in [the] program" and "relapsed at home." *Id.* at 126, 141. Although United approved John's request to increase the intensity of Janie's treatment from outpatient to partial hospitalization—noting that Janie "need[ed the] structure and intensity of [a] higher [level of care than intensive outpatient therapy] to maintain sobriety"—Janie refused. *Id.* at 126–27. She instead "dropped out" of treatment on September 10 and declined partial hospitalization, all against medical advice. *Id.* at 126.

Five months later, in February 2005, Janie's sister and her husband convinced her to give substance-abuse treatment a second try, this time at Sierra Tucson's inpatient rehabilitation center. *Id.* at 141. Although Janie agreed to the thirty-day residential program, United did not. It concluded that Janie needed only two days of inpatient detoxification and that her addiction otherwise could be treated on an outpatient basis because she "d[id] not have a history of prior failed treatment at the Partial Hospitalization or Intensive Outpatient Levels of Care." *Id.* at 137, 149. It based its decision on an internal claim-processing guideline, which provided that a "residential rehabilitation program is appropriate" if "[a]ny one" of a list of criteria is met, including if the patient has a "[h]istory of continued and severe substance abuse despite appropriate motivation and recent treatment in an intensive outpatient or partial hospitalization program." *Id.* at 114.

John paid for Janie's treatment out of pocket but continued to pursue coverage from United. He twice appealed internally. United twice rejected the appeals. The internal reviewers never mentioned the relevant United guideline allowing for residential-rehabilitation coverage if the patient had a "history of continued and severe substance abuse despite appropriate motivation and recent treatment in an intensive outpatient . . . program." *Id.* They instead rejected coverage because Janie did not meet other listed criteria less relevant to her situation: There was "no evidence of medical complications due to [Janie's] history of substance abuse . . . [or] acute psychiatric symptoms that required inpatient monitoring," *id.* at 155–56, and Janie "did not appear to be at risk of medically dangerous withdrawal symptoms, and did not require a 24-hour secured environment for treatment," *id.* at 161–62.

Having failed to persuade United's internal reviewers, John asked for a review by an outside physician, as provided for in the ERISA healthcare plan.  In his letter requesting an appeal, he pointed out that "Janie had a history of prior failed treatment at the intensive outpatient level of care at Ridgeview Institute in Atlanta, Georgia from August 19, 2004 through September 10, 2004."  *Id.* at 168.  He also submitted two letters from Janie's treating physicians—Dr. Jobson and Dr. Michael Scott—that each recommended inpatient rehabilitation.  Dr. Jobson expressly noted Janie's history of failed outpatient treatment, opining that "it was medically necessary for [Janie] to get inpatient treatment due to the severity of the illness and the failure of less restrictive treatments in the past," including "outpatient attempts at treatment and AA meetings."  *Id.* at 269.

United sent the appeal to Dr. Marc Clemente for review but mistakenly asked him to determine the medical necessity of Janie's treatment using a more restrictive guideline than the residential-rehabilitation guideline.  *Id.* at 186.  Applying the incorrect guideline, Dr. Clemente found that Janie's thirty-day rehabilitation was not medically necessary.  *Id.* at 178.  He did not mention Janie's prior failed outpatient treatment in his decision.  *Id.*  Nor did he explain why he disagreed with the recommendations of Janie's two treating physicians.  *Id.*

With all avenues for review through United exhausted, John pursued relief in federal court, claiming United wrongly denied benefits.  *See* 29 U.S.C. § 1132(a)(1)(B); R. 1 at 5–6.  In preparing the administrative record for filing, United realized that Dr. Clemente had applied the wrong criteria in deciding to deny Janie benefits.  App. R. 24 at 186.  It thus asked him to conduct a second review of his decision using the correct standard.  *Id.*; *see also id.* at 191.  Dr. Clemente's conclusions did not change; he still recommended denying the benefits.  *Id.* at 191.  He again did not mention Janie's prior failed outpatient treatment, and he again did not explain his reasons for disagreeing with Janie's treating physicians.  *Id.*

The parties each moved for summary judgment on the administrative record.  The district court granted John's motion in part, holding that United's review of Janie's claim was procedurally unreasonable.  It remanded the claim to United to conduct a "full and fair" review, instructing United to add the letters from Janie's treating physicians to the administrative record and to explain why it disagreed with their opinions.  R. 43 at 13–18.

United's "full and fair" review was neither full nor fair. Rather than sending Janie's information to a new physician for a new review, United merely got a letter from Dr. Clemente stating that, "[t]o the best of [his] knowledge," he had reviewed Dr. Jobson and Dr. Scott's letters during his initial review and that on "re-review of the letters" his (third) opinion to deny treatment remained "unchanged." App. R. 24 at 273–74. With this information in hand, United applied for summary judgment again. Unimpressed, the district court admonished United for attempting to relitigate whether its procedures for review had been defective rather than following the order to conduct a full and fair review afresh. R. 54 at 13, 15–16. It made its marching orders clear: United should allow John to "submit additional information to United before a decision is made"; it should "have a different doctor conduct the independent external review"; and it should "*explain* why it disagreed with the medical opinions of Plaintiff's treating physician and psychiatrist." *Id.* at 15–16.

Having failed to take the hint, United now failed to take the directive. The third review went no better. Before the review, John resubmitted the two 2005 letters written by Dr. Jobson and Dr. Scott along with three new letters written by Janie's treating physicians that responded directly to United's residential-rehabilitation guideline. (United did not provide John with this guideline until litigation began in 2008.) Instead of forwarding the new letters to a new reviewer for consideration as the district court had ordered, United objected to them and instructed the reviewers that—although they could "decide what weight to give the various materials"—United believed they "should disregard or give little weight to the three [new] letters" because they "d[id] not provide any specific information regarding Janie Butler's condition on February 17–18, 2005" and were "not relevant to a determination [of] whether she met the criteria for residential treatment." App. R. 24 at 282. The reviewers followed United's rather than the court's instructions. They denied Janie's claim and, in doing so, they failed to explain their disagreement with (or even mention) the letters from Janie's treating physicians and failed to explain why her prior unsuccessful outpatient treatment at the Ridgeview Institute did not qualify her for residential rehabilitation under United's guideline. *Id.* at 302–07.

The district court was not amused. Treating this third try as a third strike, the court found that United still had "not provide[d] a full and fair review," that another remand would be

"futile," that John (on behalf of Janie) was entitled to the cost of the denied benefits plus prejudgment interest, R. 102 at 2, and that John was entitled to $99,000 in penalties because United did not provide him with its residential-rehabilitation guideline until two years after he requested it, *id.* at 25; 29 U.S.C. § 1132(c)(1)(B).

## II.

On appeal, United argues that the district court erred in granting John the cost of Janie's rehabilitation benefits and in awarding him statutory penalties. We disagree with United's first argument but must accept its second.

*Award of Rehabilitation Benefits.* Under the terms of its insurance plan, United has discretion to interpret the plan provisions and to decide whether requested services are medically necessary. Where the plan grants an insurer discretion, a federal court has no license to second-guess the denial of benefits unless the decision was arbitrary and capricious. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). Decisions that result from "a deliberate, principled reasoning process" and that rely on substantial evidence survive this arbitrary-and-capricious review. *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Even this deferential standard exceeds United's grasp as we enter the ninth year of the insurance company's failure to provide coverage to its insured.

United's refusal to give Janie's benefits claim a fair review not once, not twice, but *three times*—in spite of clear instructions from the district court—casts a pall over United's handling of the claim from the start. Through it all, through three chances to get it right (indeed through three chances just to engage in a nonarbitrary decision-making process), United failed the Butlers in multiple ways. United never explained its disagreement with the opinions of Janie's treating physicians, which all contained detailed accounts of her prior attempts to get sober using increasingly intensive outpatient programs and which unequivocally deemed residential treatment necessary. *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006). United ignored key pieces of evidence and the key guideline applicable to Janie's claim, making factually incorrect assertions (e.g., Janie had no history of trying unsuccessfully to treat her addiction with outpatient treatment), *see, e.g.*, App. R. 24 at 149, or remaining silent about the matter, *see, e.g.*, *id.* at 155–56, 161–62, or (worst of all) mentioning the prior failures but

nonetheless concluding without explanation that she did not meet the guideline requirements, *see, e.g.*, *id.* at 304; *see Evans v. UnumProvident Corp.*, 434 F.3d 866, 877, 879 (6th Cir. 2006). And United stacked the deck against the claim, instructing reviewers to "disregard" the evidence that John submitted in favor of the "contemporaneous physician-authored documents" that it had entered in the record. App. R. 24 at 282–83; *see Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000).

That Janie obviously qualified for rehabilitation benefits under United's residential-rehabilitation guideline carries the day. United grants residential-rehabilitation benefits to insured individuals with a "[h]istory of continued and severe substance abuse despite appropriate motivation and recent treatment in an intensive outpatient . . . program." App. R. 24 at 114. Janie had a history of alcohol addiction that predated her request for residential rehabilitation by at least five years. *See id.* at 139. Two physicians and two clinicians documented Janie's repeated, unsuccessful attempts to treat her alcoholism using less intensive programs, including one-on-one counseling, Alcoholics Anonymous, sober sponsors and other types of outpatient care. *Id.* at 268–72, 276–81. And five months before requesting residential treatment at Sierra Tucson, Janie tried unsuccessfully to overcome her addiction in an intensive outpatient program at Ridgeview Institute, leading United itself to comment that Janie "need[ed the] structure and intensity of [a] higher [level of care than intensive outpatient therapy] to maintain sobriety." *Id.* at 126–27. Nothing in the record supports its decision to deny benefits, leaving just one option: The decision was arbitrary and capricious.

In trying to head off this conclusion, United argues that the district court had already concluded in its initial opinion that sufficient evidence existed to support United's decision to deny benefits. The district court did no such thing. It concluded that Janie was not "clearly entitled" to benefits "based upon the evidence in the [r]ecord" *as it stood at the time of that decision*. R. 43 at 18–23. The record at that time, recall, did not include the letters of Janie's treating physicians because United forgot to add them. The addition of the letters changed the nature and weight of the evidence and rendered the district court's earlier view obsolete. The argument proves too much anyway. If the district court had indeed intended its first decision to mean what United claims it does, remanding Janie's case to United would have amounted to a

useless gesture. For, under this assumption, the district court had already determined that United's decision to deny benefits could never be arbitrary and capricious no matter what additional evidence John brought forward on remand. That does not make sense.

United adds that the decision to deny benefits cannot be arbitrary and capricious because five reviewing physicians agreed with it. That reviewing physicians paid by or contracted with the insurer agree with its decision, though, does not prove that the insurer reached a reasoned decision supported by substantial evidence. The physicians' opinions carry weight only to the extent they provide a fair opinion applying the standard for granting benefits to the facts of the case. *Elliott*, 473 F.3d at 619. The reviewing physicians did not do that. They misstated or omitted the key fact of Janie's prior failed outpatient treatment and ignored United's guideline that allowed residential rehabilitation where outpatient treatment had not worked in the past. This argument, too, proves too much. If a decision to deny benefits could never be arbitrary and capricious when backed by the insurer's reviewing physicians, court review would be for naught. The insurer would invariably prevail so long as the insurer had physicians on its staff willing to confirm its coverage rulings. That also does not make sense.

At oral argument, United offered a third reason why its decision to deny benefits was not arbitrary and capricious: John Butler never submitted a letter from the treating physician at Sierra Tucson who first spoke with United's internal reviewers and who explained why Janie qualified for residential treatment under United's guidelines. Without this letter, according to United, John could not show that Janie deserved benefits at the time of that admission. Never mind that United did not raise the point in its briefs and thus forfeited it, *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013); the argument still does not persuade. The argument wrongly assumes that John may only prove the medical necessity of a treatment by providing the opinion of the physician that (by happenstance) first spoke with the insurer's claim-reviewing physicians. We know of no rule so narrowly circumscribing the claimant's presentation of evidence. In this case, more to the point, such a rule would make no sense. The key question underlying the benefits decision was whether Janie had previously failed outpatient treatment. It would be odd to conclude that the physician at Sierra Tucson, who had just known Janie Butler for two days, could offer the best (or, in United's view, the only) insights about her history of

prior failed outpatient treatment when her longtime psychiatrist Dr. Jobson had firsthand knowledge of the prior failed efforts. Dr. Jobson submitted a letter explaining to United that residential treatment was "medically necessary" given "the severity of [Janie's] illness and the failure of less restrictive treatments in the past." App. R. 24 at 269. United offers no good reason to discount Dr. Jobson's opinion on the key issue in dispute, particularly when Janie's other treating physicians and clinicians agreed with his recommendation.

*Award of Statutory Penalties.* The district court awarded statutory penalties to John Butler, reasoning that ERISA allows penalties of "up to $100 a day" if the plan "administrator" "fails or refuses to comply with a request for any information" that the statute requires the administrator to provide. 29 U.S.C. § 1132(c)(1)(B). Yet because United is not the "administrator" of the plan, that was a mistake.

The statute defines the "administrator" as either "the person specifically so designated by the terms of the instrument under which the plan is operated" or, "if an administrator is not so designated, the plan sponsor," meaning "the employer in the case of an employee benefit plan." *Id.* § 1002(16). This plan stated that United was "not the plan administrator or named fiduciary of the benefit plan." App. R. 24 at 81. Because the plan did not specify an administrator elsewhere, the default rule applied, rendering the employer-purchaser of the plan (John's law firm—Butler, Vines and Babb, P.L.L.C.) the administrator under the statute. *Id.* at 5; *see also* 29 U.S.C. § 1002(16). As United was not the plan administrator, the district court had no authority to impose penalties against it under this statute. *See, e.g., Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 584–85 (6th Cir. 2002); *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001).

John Butler counters that judicial estoppel prevents United from asserting that it is not the plan "administrator" for purposes of 29 U.S.C. § 1132(c)(1)(B) because it called itself the plan administrator in various motions and briefs. Not so—most pointedly not so because United has not taken "clearly inconsistent" positions on whether it qualifies as the plan "administrator" as the term is used in § 1132(c)(1)(B). *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Some background is in order. ERISA-governed plans, as it turns out, often have two types of "administrators." *Corporate Counsel's Guide to ERISA* § 4:6 (2014). The first type—a

*claims* administrator—is the entity that "administers claims for employee welfare benefit plans and has authority to grant or deny claims." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *see also Corporate Counsel's Guide to ERISA* § 4:6 ("[A] claims administrator is the party responsible for claims review and approval under the given benefit plan."). The second type—a *plan* administrator—is usually the "employer who adopted the benefit plan in question." *Corporate Counsel's Guide to ERISA* § 4:6. "The phrase 'plan administrator' should not be confused with the term 'claims administrator.' . . . [T]h[e] role [of claims administrator] usually does not confer on that party the status of plan administrator." *Id.* Quite often, indeed, the claims administrator and the plan administrator are not the same. *See, e.g.*, *Moore*, 458 F.3d at 424–25, 438 (distinguishing between the employer/plan administrator and the insurance company/claims administrator); *see also Fendler v. CNA Grp. Life Assurance Co.*, 247 F. App'x 754, 755, 758–59 (6th Cir. 2007).

United, to be sure, referred to itself as an administrator at various points in its briefs. But it used the term as a shorthand way to indicate that it was the *claims* administrator, the entity with discretionary authority to administer (decide whether or not to award) benefits. United did not suggest that it was the plan "administrator" for purposes of § 1132(c)(1)(B) and the duties under it. To the contrary, United protested repeatedly that it was not a plan "administrator" under § 1132(c)(1)(B) as soon as John Butler suggested he might seek penalties under that statute. *See, e.g.*, R. 55 at 2; R. 60 at 2.

The penalties, moreover, fail for another reason: John did not allege that United violated § 1132. John claimed that United violated 29 C.F.R. § 2560.503-1(g), a regulation that implements § 1133, not § 1132. *See* 29 C.F.R. § 2560.503-1(a). Because the district court had no authority to award § 1132(c) damages for violations of the regulations implementing § 1133, the district court erred in awarding § 1132(c) penalties in this instance. *See VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992).

For these reasons, we affirm in part and reverse in part.