**Mar–Ya J. ZUKE, Plaintiff–Appellant,**

v.

**AMERICAN AIRLINES, INC., Long-Term Disability Plan; Metropolitan Life Insurance Co., Defendants–Appellees.**

No. 15–3465.

United States Court of Appeals, Sixth Circuit.

March 31, 2016.

BEFORE: BOGGS and DONALD, Circuit Judges; HOOD, District Judge.*

OPINION

BERNICE BOUIE DONALD, Circuit Judge.

Mar–Ya Zuke commenced action against defendants, American Airlines, Inc. Long–Term Disability Plan (the "Plan") and Metropolitan Life Insurance Co. (the "Plan Administrator" or "MetLife"), challenging the termination of her long-term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* On a motion for judgment as a matter of law, the United States District Court for the Southern District of Ohio entered judgment in favor of the defendants. Because the Plan Administrator acted arbitrarily and capriciously in denying Zuke long-term benefits, we **VACATE** the district court's judgment and

---

* The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

**REMAND** the case to allow the Plan Administrator to make a full and fair inquiry.

## I.

Mar–Ya Zuke ("Zuke") formerly worked as a sales and service representative in the central reservations office of American Airlines, assisting customers with their travel bookings. Due to severe injuries suffered from a car accident, Zuke stopped working on December 16, 1998, and filed for long-term disability benefits ("LTD") through American Airlines. Zuke was covered under American Airlines' Long–Term Disability Plan, which Metropolitan Life Insurance sponsors.

Under the Plan, American Airlines provides LTD benefits to employees who become totally disabled, meaning that they are unable to perform major and substantial duties of any occupation for which they are reasonably qualified. The Plan Administrator deemed Zuke to be totally disabled and eligible to receive LTD benefits. After paying Zuke LTD benefits for thirteen years, the Plan Administrator decided to terminate Zuke's benefits on April 19, 2012.

The Plan Administrator first began advising Zuke of possible termination in correspondence, dated December 11, 2011, January 17, 2012, and March 2, 2012. The correspondence requested Zuke to provide documentation that the Plan Administrator needed for ongoing review and management of her LTD claim. On March 23, 2012, the Plan Administrator received the requested documentation, but, according to MetLife, certain pages were missing and illegible. The Plan Administrator unsuccessfully attempted to notify Zuke by phone of the errors—once on March 27, 2012, and again on April 5, 2012. The Plan Administrator then contacted Zuke's physician, Dr. Kevin Fiehrer, and explained the fax transmission errors with the documentation. Dr. Fiehrer's office requested another form to retransmit the necessary documents, but the doctor's office never received the form.

On April 19, 2012, the Plan Administrator issued Zuke a termination letter, explaining that it was terminating Zuke's benefits due to limited medical information on file. The letter quoted the provision in the Plan that the Plan Administrator used to terminate her benefits and informed Zuke how to seek a second review.

On April 23, 2012, Zuke wrote a letter to MetLife requesting a second review of her claim, attaching additional supporting medical records and documentation. On June 12, 2012, the Plan Administrator's physician consultant, Dr. Afrom Simon, who is board-certified in Occupational and Environmental Medicine, reviewed Zuke's additional medical records. Dr. Simon opined that "the only objective data in the file to support any pathology in Zuke is her history of a prior cervical spine fusion from 2000." R. 19, PageID 508. Dr. Simon further concluded that "there are few actual examinations of this patient in this file and those that are provided detail next to nothing that is objectively abnormal. . . . There is no documentation of any restrictions in range of motion of any joint, in the axial skeleton or spine." *Id.* On June 25, 2012, the Plan Administrator denied Zuke's claim for benefits, stating that "the [additional] information received does not change our previous decision to terminate your LTD benefits." *Id.* at 510.

On December 13, 2012, Zuke's counsel appealed the decision and submitted the following updated information and findings from recently conducted exams and medical reviews supporting Zuke's claim: (1) a July 11, 2012 comprehensive examination—including cervical and lumbar spine MRIs—conducted by Dr. Janalee Riss-

over; and (2) a September 11, 2012 physical examination conducted by Dr. Onassis A. Caneris, who also treated Zuke with a lumbar epidural injection for pain.

In Zuke's records, Dr. Rissover noted that Zuke suffered from "fairly extensive degenerative disc disease," a newly discovered disc herniation, and mild to moderate restrictions in range of motion in her cervical, thoracic, and lubrosacral spine. R. 19, PageID 0549. Dr. Rissover advised Zuke that she should limit herself to sitting for one to one and one-half hours during a work day and walking only 100 feet or less and, before walking another 100 feet, she would need to rest for over one hour with her feet elevated. Dr. Caneris noted that Zuke had a reduced range of motion over the right shoulder and cervical pain, cervical radiculopathy on the right side, and suffered from cervical post-laminectomy syndrome.

MetLife then solicited reviews from its physicians, Dr. Siva Ayyar and Dr. Arousiak Varpetian. Dr. Ayyar conducted a file review of Zuke's updated file and stated the following:

> Given the lack of concordant MRI findings, it is difficult to support restrictions as proscriptive [as those] suggested by Dr. Rissover.... I would likewise take exception to Dr. Rissover's comment that the claimant needs to recline or lie down when she develops pain. At this point, maintaining an appropriate level of activity is part and parcel of the claimant's recovery.... Returning to work would, in fact, likely ameliorate Ms. Zuke's ongoing complaints of pain.

R. 19, PageID 622–23. Dr. Varpetian concluded, "[t]he records have not [included] documentation of any neurological abnormalities, which would cause the claimant impairment. The claimant is diagnosed with cervical and lumbar radiculopathy, but examination does not reveal any sensory, motor, or reflex changes in a radicular pattern." R. 26, PageID 1200.

On April 9, 2013, well after the time when the appeal decision was expected, the Plan issued its final letter to Zuke upholding its termination of her LTD benefits. It stated that "in the absence of objective medical/clinical evidence to substantiate total disability," termination was appropriate. R. 19, PageID 11–12.

Zuke appeals the district court's decision to grant the defendants' motion for judgment as a matter of law, challenging the Plan's decision to terminate her benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. She claims that American Airlines and MetLife arbitrarily and capriciously terminated her LTD benefits by failing to provide her with notice and a full and fair review pursuant to 29 U.S.C. § 1133.

## II.

We ordinarily review de novo a denial of benefits under ERISA. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, if the benefit plan gives the plan's administrator, or the fiduciary, discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we review the denial of benefits under the arbitrary and capricious standard of review. *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 984 (6th Cir. 1991). Zuke argues that the district court should have reviewed her ERISA challenge de novo because the Plan violated its fiduciary duties.

We disagree. The Plan makes an express grant of discretionary authority to the Plan Administrator, MetLife. The pertinent language of the Plan reads as follows: "the plan administrator and other

fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan." R. 19, PageID 782. Even though Zuke alleges that MetLife neglected its fiduciary duties, that allegation alone cannot alter this Court's standard of review. *See Miller,* 925 F.2d at 983–84. Given the Plan's more than sufficient grant of discretionary authority, we review the benefits termination under the deferential arbitrary and capricious standard of review, as discretionary authority in determining LTD benefits lies with the Plan and not with this Court. *See id.*

Although the arbitrary and capricious standard is deferential, it is not a rubber stamp of the administrator's determination. *Moon v. Unum Provident Corp.,* 405 F.3d 373, 379 (6th Cir.2005). We review the district court's decision to grant the defendants' motion for judgment as a matter of law *de novo. McClain v. Eaton Corp. Disability Plan,* 740 F.3d 1059, 1064 (6th Cir.2014). Therefore, the ultimate issue here is not whether the discrete acts by the Plan were arbitrary and capricious but whether its ultimate decision denying Zuke benefits was arbitrary and capricious. *See Evans v. UnumProvident Corp.,* 434 F.3d 866, 876 (6th Cir.2006). To resolve this issue, we must determine if the Plan provided Zuke with adequate notice and a reasonable opportunity to be heard through a full and fair review. *See* 29 U.S.C. § 1133.

### A.

■ First, we turn to Zuke's contention that she was denied a full and fair review pursuant to § 1133(2). Under the arbitrary and capricious standard, we must uphold a plan administrator's decision if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *DeLisle v. Sun Life Assur. Co. of Canada,* 558 F.3d 440, 444 (6th Cir.2009) (quoting *Glenn v. MetLife,* 461 F.3d 660, 666 (6th Cir.2006)). A plan administrator acts arbitrarily and capriciously when it "engages in a selective review of the administrative record to justify a decision to terminate coverage." *Metro. Life Ins. Co. v. Conger,* 474 F.3d 258, 265 (6th Cir.2007) (internal quotation marks omitted).

Zuke alleges that the Plan Administrator failed to provide her a full and fair review in three ways: (1) MetLife ignored reliable, objective evidence from Zuke's treating physicians on her condition; (2) MetLife failed to give her a reasonable opportunity to respond to the contrary evidence of her total disability status; and (3) MetLife failed to present evidence of her improvement to support her termination. While we find the latter two allegations unpersuasive, we conclude that Zuke's first contention sufficiently evidences an arbitrary and capricious termination of benefits, particularly given our recent decision in an almost identical case, *Shaw v. AT & T Umbrella Ben. Plan No. 1,* 795 F.3d 538 (6th Cir.2015).

In *Shaw,* this Court addressed whether the defendants ignored objective medical documentation in its termination of the plaintiff's LTD benefits. 795 F.3d at 547. Although the plan administrator in that case determined that there was no objective medical documentation demonstrating the participant's inability to perform an occupation, we found that it ignored evidence submitted by the participant's treating physicians, selectively reviewed the record, failed to conduct its own physical examination, and improperly relied on its own non-treating physicians. *Id.* at 547. These findings, taken as a whole, suggested a marked deviation from a deliberate, principled reasoning process. *Id.* at 549.

Notably, in denying the benefits, the plan administrator stated that there were no measurements of range-of-motion restrictions; no specific physical examinations to indicate functional impairment; and no neurological and motor strength testing. *Id.* at 548. Yet, the participant provided all of that information in the medical records. *Id.* Physical therapy records illustrated that the participant had significant range-of-motion limitations, such as a cervical flexion of two degrees, and extension of ten degrees. *Id.* Medical records demonstrated that the participant had significant functional limitations, such as an inability to stand for more than thirty minutes, walk for more than ten minutes, and lift more than ten pounds with his left hand. *Id.* Clinical records revealed positive Spurling test results that objectively indicated radicular pain. *Id.* The physician's residual-functional-capacity questionnaire detailed the extent the plan participant could complete work-related tasks. *Id.*

Making factually incorrect assertions in combination with selectively reviewing a claimant's records supports a finding that the plan administrator acted arbitrarily and capriciously. *Id.; see also Butler v. United Healthcare of Tenn., Inc.,* 764 F.3d 563, 568 (6th Cir.2014) (finding that the plan acted arbitrarily and capriciously in part because it "ignored key pieces of evidence" and made "factually incorrect assertions"). Therefore, we concluded in *Shaw* that the plan administrator's decision was arbitrary and capricious mainly because the plan stated that no objective evidence existed.

Similarly, here, the Plan's conclusion that there was no objective evidence directly contradicts the record: Zuke's cervical and lumbar MRIs indicate "fairly extensive degenerative disc disease" and a "new disc herniation," R. 19, PageID 549;

Zuke's positive Spurling test results indicate radicular pain, R. 19, PageID 77; and finally, the record contains a physician's notes on the reduced range of motion over the right shoulder, R. 19, PageID 87. Moreover, the Plan Administrator dismissed objective findings related to Zuke's pain. This Court has already recognized the arbitrary nature of a reviewing physician's determination about a claimant's pain. *See Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 263–64 (6th Cir.2006) (holding that it was improper to rely on a non-examining medical consultant to determine severity and credibility of pain); *Fura v. Fed. Exp. Corp. Long Term Disability Plan,* 534 Fed.Appx. 340, 343 (6th Cir. 2013) ("[The doctor] never examined [the claimant], so he had no first-hand knowledge of [the claimant's] pain."). Contrarily, a treating physician's notes detailing the functional capabilities of a patient are objective evidence. *See Brooking v. Hartford Life & Accident Ins. Co.,* 167 Fed. Appx. 544, 549 (6th Cir.2006) (describing a functional-capacity evaluation as "objective evidence" of the claimant's back pain).

Likewise, we must find for Zuke, as we did in *Shaw:* that defendants ignored key objective evidence and engaged in a selective review of the record when it concluded on April 9, 2013, that there was no "objective medical/clinical evidence." R. 1, PageID 11. As outlined in *Shaw,* when a plan categorically states that there is no objective evidence when in fact there is such evidence—favorable or not—the plan acts arbitrarily and capriciously. The effect is even more obvious when the plan heavily relies on findings from its own non-treating physicians, or reviewing physicians. Although plan administrators are not obliged to accord special deference to the opinions of treating physicians, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), the cursory manner in which a

plan summarily dismisses objective findings from treating physicians indeed suggests that the Plan's decision was not a result of a deliberate, principled reasoning process. *See DeLisle,* 558 F.3d at 447–48.

Here, without ever examining Zuke or providing any supporting evidence of its own, the Plan Administrator made conclusory credibility determinations questioning Zuke's treating physicians' findings with statements such as, "the records did not [include] documentation of any neurological abnormalities, which would cause the claimant impairment" and "returning to work would, in fact, likely ameliorate Ms. Zuke's ongoing complaints of pain." R. 19, PageID 622. Given the objective evidence ignored by the Plan as well as the cursory manner in which Zuke's treating physicians' findings were dismissed, we cannot find that the Plan's termination of Zuke's benefits was the result of a full and fair review.

### B.

Zuke also alleges that the Plan Administrator failed to provide her adequate notice before it terminated her benefits due to an alleged unsuccessful fax transmission of documents. The Plan Administrator contends that it made several attempts to notify Zuke and her physician of the errors in document transmission to permit resubmission. However, in light of our finding that the Plan Administrator failed to provide a full and fair review, we need not address the issue of notice.

### III.

Finally, we turn to deciding the remedy. When a benefits plan is found to have acted arbitrarily and capriciously, this Court has two options: award benefits to the claimant or remand to the plan administrator. *Shaw,* 795 F.3d at 551. "[W]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled, the appropriate remedy generally is to remand to the plan administrator." *Elliott v. Metro. Life Ins. Co.,* 473 F.3d 613, 622 (6th Cir.2006) (internal quotation marks and brackets omitted). In this matter, we cannot say that Zuke is clearly entitled to benefits, only that there is a want of a deliberate, principled reasoning process. *See id.* at 623. Therefore, we vacate the judgment of the district court and remand this case for entry of an order requiring the defendants to conduct a full and fair review of Zuke's disability claim.

### IV.

For the foregoing reasons, we **VACATE** the district court's judgment and **REMAND** this case to allow the Plan Administrator to make a full and fair inquiry in accordance with this Court's precedent.

BOGGS, Circuit Judge, concurring in the judgment only.